# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Heinrich*, 2014 IL App (2d) 121333

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MARY LEE HEINRICH, Petitioner and Counterrespondent-Appellee, and PAUL HEINRICH, Respondent and Counterpetitioner-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1333 |
| Filed | March 19, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Parties' premarital agreement's attorney-fee-shifting ban as to child-related issues violates Illinois public policy and is unenforceable as to those issues, but the remainder of the agreement, pursuant to its severability clause, remains enforceable. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 10-D-622; the Hon. John A. Noverini, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

| Counsel on Appeal | Michael J. Scalzo and Todd D. Scalzo, both of Scalzo Law Offices, of Wheaton, for appellant. |
| | |
| | Keith E. Roberts, Jr., and Joseph P. O'Brien, both of Roberts P.C., of Wheaton, for appellee. |
| | |
| | |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Presiding Justice Burke concurred in the judgment and opinion. |
| | Justice Hutchinson dissented, with opinion. |

**OPINION**

¶ 1    Petitioner, Mary Lee Heinrich, filed a petition for dissolution of her marriage to respondent, Paul Heinrich. Subsequently, respondent filed a motion for declaratory judgment, seeking a general determination of the parties' rights under their premarital agreement. The trial court declared the parties' premarital agreement valid and enforceable. It subsequently denied respondent's motion to reconsider, which was brought 17 months later, and found that there was no just reason to delay enforcement or appeal or both pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). Respondent appeals, arguing that the trial court erred in: (1) declaring that the premarital agreement's attorney-fee-shifting ban was valid as to child-related issues; (2) denying respondent's motion to reconsider for untimeliness and lack of new facts; and (3) declaring the premarital agreement valid and enforceable. We affirm in part, reverse in part, and remand the cause for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3    The parties were married on May 26, 2001. Petitioner was 36 years old and employed at her father's company. Respondent was 44 years old and self-employed as an attorney. He also had an ownership interest in an airplane rental and charter business. Prior to their marriage, on May 25, 2001, they signed a premarital agreement. The agreement states that each party's estate has approximately the same value and that petitioner's estate "is expected to increase through gifts to her or inheritances received from members of her family." Financial disclosure exhibits attached to the agreement list the parties' assets, liabilities, and net worth. Petitioner's exhibit lists net assets of over $1.9 million (including her interests in various family-owned businesses, listing McKelvey Homes of Missouri, LLC (valued at $405,900), but not including McKelvey Rental, LLC, which is at issue in this appeal) and no liabilities. In 1999, her adjusted gross income was $383,445, and, in 2000, it was $279,358. An item described as "Anticipated Inheritance" lists the value as "Amount undetermined."

- 2 -

¶ 4        Respondent's exhibit reflects a net worth of $620,000. His income in 1998 was $380,000; in 1999, it was $180,000; and his estimated 2000 income is listed as $130,000.

¶ 5        As to attorney fees, section 6.9 of the premarital agreement states:

> "If either party contests the validity of this Agreement, and the Agreement is held valid, the contesting party shall be liable for and pay the other party's legal fees and expenses, however, either party can seek judicial interpretation of the meaning of this Agreement if it appears ambiguous as long as they overtly and explicitly accept the validity of the Agreement, in which case each pays his or her own legal fees and expenses."

¶ 6        The agreement also provides, in section 4.2(d) (which is at issue here), that, if the parties' marriage is dissolved or in the event of a legal separation:

> "Neither party shall make any claim upon the other for costs or attorneys' fees whether *pendente lite* or final, incurred in seeking or obtaining any such order or decree, notwithstanding any right to costs or attorneys' fees a party otherwise may have pursuant to any statute of any jurisdiction ***."

¶ 7        The premarital agreement further states that, in the event of divorce, each party would keep sole ownership of his or her own separate property and the parties would equally divide the shared property, regardless of their respective contributions to the shared property during the marriage. Shared property is defined as: (1) all property acquired by the parties during the marriage and jointly titled or titled as tenants by the entireties; (2) tangible personal property that has no formal ownership designation and is acquired during the marriage for joint use and enjoyment; (3) wages and earned income received by the parties during the marriage, including nonpassive income from any partnership or business; (4) all investments, savings, or other property, whether tangible or intangible, acquired by the parties with wages or other earned income; and (5) retirement accounts, to the extent they are funded with income earned by either party during the marriage. Separate property is defined as property that: (1) belongs to either party at the commencement of the marriage as reflected in the exhibits; (2) is acquired by either party during the marriage by gift, devise, bequest, descent, inheritance, or like acquisition; (3) is acquired by either party during the marriage and placed or maintained in his or her separate name or account, but excluding any property derived from either party's earned income during the marriage; or (4) is acquired by either or both parties during the marriage and is not shared property. However, the agreement provided that, since respondent would pay the mortgage for his Wisconsin residence from his earned income (*i.e.*, shared property), petitioner could claim an offset by transferring equal amounts of her earned income into her own separate property. Also, if petitioner stopped working in order to raise children, she would instead receive an equity interest in respondent's Wisconsin residence equal to one-half of his mortgage payments. (The agreement, however, did not contain a reciprocal provision allowing respondent to claim an offset for any expenses petitioner might pay with her earned income for her ownership of a Missouri residence and her one-third interest in a Missouri farm.)

¶ 8        The agreement also states that the parties would be barred from seeking maintenance against each other, unless petitioner stopped working in order to raise children, in which case she could seek rehabilitative maintenance for up to two years. The agreement further states that each party was represented and advised by separate counsel and that each party acknowledged that he or she was fully advised of the other party's financial means and resources and examined the other's exhibit with the benefit of separate counsel. It also contains a severability

clause and an arbitration clause, and it provides that Missouri law controls its construction and effect.

¶ 9        Again, the parties were married one day after they executed the agreement. During the marriage, they had two children: Grace (born in December 2002) and Elliott (born in September 2004).

¶ 10       On April 28, 2010, petitioner petitioned for dissolution of the parties' marriage. She sought joint custody of the children and child support. She attached a copy of the premarital agreement and stated that both parties should be barred from receiving maintenance. On July 9, 2010, petitioner petitioned for temporary child support. On August 30, 2010, she served respondent with her verified comprehensive financial statement, listing her 2010 net income as $6,646 per month and her household expenses as $12,122 per month (resulting in a $5,476 monthly shortfall). Petitioner also listed total assets of about $4.12 million with no liabilities. She listed as part of her nonmarital assets McKelvey Rental, which she noted she acquired in 1992, with a current value of $622,479. (Again, McKelvey Homes was listed in her exhibit to the premarital agreement.)

¶ 11       On September 30, 2010, respondent filed his financial statement, listing his 2010 net income as $30 per month and his living expenses as $3,880 per month (resulting in a $3,850 monthly shortfall). He also listed total assets of about $295,000 and total liabilities of about $400,000. At a hearing on September 30, 2010, the trial court ordered respondent to pay petitioner $1,000 per month as contribution to household expenses.

¶ 12       On October 26, 2010, respondent moved for interim attorney fees, noting, in part, that he estimated fees of $25,000 to $75,000, due to a "complex premarital agreement." In response, as an affirmative defense, petitioner raised the agreement's attorney-fee-shifting provision. On November 15, 2010, the trial court denied respondent's motion for interim fees and appointed a guardian *ad litem* (GAL).

¶ 13       On March 3, 2011, respondent moved for a declaratory judgment (735 ILCS 5/2-701 (West 2010)), seeking a general determination of the parties' rights under the premarital agreement and arguing that there was an actual controversy as to the validity and enforceability of the agreement, in whole or in part. In her response to respondent's motion, petitioner argued that Missouri law controlled, the agreement was valid because it contained a disclosure of the parties' assets and liabilities, the outline of the parties' rights and obligations in the agreement was fair, and it contained a clear and unambiguous maintenance waiver that both parties understood when they executed the agreement. She also argued that the parties voluntarily entered into the agreement, it was not unconscionable, and both parties were provided with a fair and reasonable disclosure. Petitioner also raised the agreement's arbitration provision, requesting that the trial court order the parties to arbitrate their dispute. However, because the agreement did not contain any provisions relating to custody, visitation, or support of the minor children, she asked the court to specify that those issues not be submitted to binding arbitration (as it would further be against public policy to do so (see *In re Marriage of Best (Best II)*, 387 Ill. App. 3d 948, 951 (2009))). Also on that date, respondent filed a counterpetition for dissolution of marriage, requesting, *inter alia*, that each party be ordered to pay his or her own debts, attorney fees, and costs.

¶ 14       On March 31, 2011, the trial court ruled that it would determine issues of custody, visitation, support, college contribution, and children's health insurance and reserved the remaining issues relating to arbitration.

¶ 15    At an April 8, 2011, hearing, petitioner requested a finding that the premarital agreement was valid and enforceable. Respondent's counsel responded that "what we're asking the Court to rule on, is the validity and the enforceability of the prenuptial agreement *** whether or not it's violative of Illinois public policy or whether or not it contains appropriate safeguards for the parties in the context of a dissolution proceeding." The trial court noted that it had reviewed the agreement and found it valid and enforceable. Upon this finding, respondent's counsel stated, "Very well." The court also found that, in ruling upon grounds, it would apply Illinois law; the arbitrator would rule on the division of marital assets; Missouri law would apply in an appeal from the arbitrator's award; and discovery issues would be determined by the arbitrator, who would also decide what law controls resolution of those issues.

¶ 16    On May 2, 2011, in an agreed order, issues related to child support, health insurance, and college expenses were reserved until completion of arbitration. On the same date, the court entered a joint parenting agreement and order, awarding the parties joint custody of the children, with petitioner designated as the residential custodian and respondent having rights of visitation.

¶ 17    Between May 2011 and October 2012, various proceedings took place that are not relevant to this appeal, including the court's granting to petitioner exclusive possession of the marital residence (and respondent's appeal from that decision); respondent's petition to abate contribution to household expenses and petitioner's contempt petition related to those expenses; the court's order prohibiting respondent from traveling out of state with the children (and respondent's appeal from that decision); the GAL's petitions for fees; the arbitration proceedings; and the court's dismissal of petitioner's petition for criminal contempt against respondent.

¶ 18    In an affidavit dated July 24, 2012, and filed in support of petitioner's September 26, 2012, reply to respondent's response to her 2011 summary judgment motion in the arbitration proceedings, Lloyd W. Schnieders stated that he had been petitioner's accountant for 20 years. He averred that McKelvey Homes (which, as noted, petitioner's exhibit to the 2001 premarital agreement lists and values at $405,900) was formed on December 27, 1996, and that petitioner owned 33% of it when the entity was formed. According to Schnieders, McKelvey Homes was sold in 2002 and McKelvey Rental was formed on November 30, 2002. In 2003, the proceeds from the sale of McKelvey Homes were deposited into McKelvey Rental. In her summary judgment motion, petitioner argued that she mistakenly stated in her financial statement filed in conjunction with her dissolution petition that she acquired McKelvey Rental in 1992.

¶ 19    On October 1, 2012, respondent filed a motion asking the trial court to reconsider its April 8, 2011, finding that the premarital agreement was valid and enforceable. He attached to the motion his affidavit, in which he recounted the circumstances under which he executed the agreement. Respondent averred that he was 44 years old at the time of the parties' marriage. Prior to May 2001, respondent was self-employed as an attorney and was a licensed pilot. By May 2001, respondent was winding down his law practice and was attempting to start a new career providing airplane tours and instruction. Petitioner was then age 36 and employed as an office worker in her father's company. Respondent had never before married, and petitioner was divorced. Respondent further averred that, three weeks before the wedding ceremony, petitioner's father, Robert McKelvey, showed respondent a copy of the premarital agreement and asked respondent to sign it. After a cursory review, respondent refused to do so and returned it to McKelvey. Shortly thereafter, at McKelvey's request, respondent provided a list

of his assets and liabilities "because I believed it was unrelated to the [agreement] and that [petitioner] and I were exchanging lists only for purposes of disclosure." According to respondent, on May 18, 2001, he signed petitioner's exhibit in which she listed net assets of over $2 million (but did not list McKelvey Rental, of which respondent was unaware at the time) and he signed the attorney certification.

¶ 20   Respondent further averred that, on May 25, 2001, after completing a week-long civil jury trial in Cook County, respondent flew his airplane to Wisconsin, arriving at about 10 p.m. The next day, two hours before the wedding ceremony, McKelvey presented respondent with "only the signature page" of the premarital agreement and "said [respondent] had to sign it or the ceremony would be cancelled." Respondent further averred that he did not see or read the agreement at that time, is not a divorce attorney (he practiced criminal defense and personal injury law), and is not licensed to practice law in Missouri. He did not know or understand the agreement's terms or its legal consequences. Respondent signed only the signature page, "under extreme coercion and duress, without having seen the [agreement]." More than 100 guests had arrived for the ceremony; respondent did not want petitioner to be humiliated in front of her family and friends; and respondent had paid for a 10-day honeymoon in Rome, Italy. He averred that no notary was present and that he did not recognize the separate notary seal by "Donna M. Bausano." Respondent stated that he and petitioner did not discuss the agreement until the dissolution proceedings commenced.

¶ 21   In his motion to reconsider, respondent further argued that the trial court's April 8, 2011, order was interlocutory and could be reviewed or modified at any time. He raised three issues. First, he urged that the premarital agreement was unconscionable and asked that it be set aside. Respondent argued that he did not negotiate or understand its terms, he signed it under coercive circumstances, petitioner concealed assets (noting that petitioner testified at her deposition that McKelvey Rental was not listed in her comprehensive financial statement), and its terms are one-sided (because it is structured such that respondent's resources would be shared and used for marital expenses, but petitioner's resources would be separate and used for her own expenses).

¶ 22   Second, respondent argued that the agreement's attorney-fee-shifting ban is void as to child-related issues because it violates public policy by discouraging parents from pursuing litigation in their children's best interests. He also argued that, because the provision is void under Illinois law, it was unnecessary to determine whether Missouri law applies. (As to this argument, respondent did not claim that the entire agreement was void, only that this provision was void.)

¶ 23   Third, respondent argued in the alternative that the premarital agreement was ambiguous and that material factual issues precluded a finding that it was valid and enforceable. Specifically, he asserted that a significant ambiguity existed over whether the income derived from and increased value of petitioner's separate property constitute shared property. Respondent paid marital expenses with his own earned income, which allowed petitioner to retain a proportionately greater share of income derived from her separate property and to preserve and increase the value of those assets. Thus, respondent argued, this derived income and increase in value fit within the definition of shared property because they were acquired through respondent's earned income. He also argued that there was a factual issue as to the status of petitioner's retirement benefits. Respondent requested that the court vacate its April 8,

- 6 -

2011, order and submit the matter to arbitration for an evidentiary hearing to resolve the ambiguities and for ultimate ruling on the agreement's validity.

¶ 24    In response, petitioner filed an emergency motion for an immediate hearing on respondent's motion to reconsider and for a Rule 304(a) finding. She asserted that respondent's motion for declaratory judgment did not contest the validity of the premarital agreement but rather asked the court to declare the parties' rights under the agreement and to determine its validity, to which she had responded that the agreement was valid and enforceable. Petitioner noted that her summary judgment motion in the arbitration proceedings requested that the arbitrator divide the parties' assets in accordance with the premarital agreement, which the court had declared valid and enforceable. She argued in her emergency motion that respondent had purposefully delayed the arbitration proceedings by failing to adhere to discovery deadlines and seeking continuances of the hearing on the summary judgment motion. She noted that, on October 1, 2012, about two hours before the hearing on her summary judgment motion was set to commence, respondent's counsel hand-delivered to petitioner's attorney a copy of respondent's motion to reconsider, which he set for hearing on October 31, 2012. Petitioner argued that the motion was improper and should be denied because respondent did not explain how his motion apprised the court of either newly discovered evidence (she further argued that the evidence was available to respondent at the time of the earlier hearing), a change in the law, or errors in the court's earlier application of the law, which constitute appropriate bases upon which to grant a motion to reconsider. Petitioner further argued that respondent showed a lack of diligence, letting 17 months pass since entry of the trial court's April 8, 2011, order, and that he was seeking to avoid summary judgment in the arbitration proceedings. Finally, petitioner also sought a Rule 304(a) finding (as to the earlier finding that the premarital agreement was valid and enforceable).

¶ 25    On October 10, 2012, the trial court found that petitioner's motion was not an emergency, granted respondent 14 days to respond, and set the matter for hearing. The court noted that respondent's motion to reconsider was untimely and that it presented "nothing new." At an October 31, 2012, hearing, respondent argued that, as the arbitration process moved forward, he learned that the agreement was not valid and enforceable, including petitioner's alleged nondisclosure of certain assets. The court denied respondent's motion to reconsider and found, pursuant to Rule 304(a), that there was no just reason to delay enforcement or appeal or both of its April 8, 2011, order. Respondent appeals.

¶ 26                                    II. ANALYSIS
¶ 27                                   A. Jurisdiction
¶ 28    Preliminarily, although neither party raises the issue, we address our jurisdiction over this appeal. See *In re Marriage of Mardjetko*, 369 Ill. App. 3d 934, 935 (2007) (reviewing court has *sua sponte* duty to consider its jurisdiction and dismiss the appeal if jurisdiction is lacking). On April 28, 2010, petitioner petitioned for dissolution of the parties' marriage. About one year later, on March 3, 2011, respondent filed a motion for declaratory judgment, seeking a determination of the parties' rights under their premarital agreement. On April 8, 2011, the trial court declared the agreement valid and enforceable. Over 17 months later, on October 1, 2012, respondent moved the court to reconsider its April 8, 2011, ruling. On October 31, 2012, the trial court denied respondent's motion, but found, pursuant to Rule 304(a), that there was no

just reason to delay enforcement, appeal, or both of its April 8, 2011, order. The dissolution petition remains pending in the trial court.

¶ 29    A declaratory judgment action requires: (1) a plaintiff with a tangible, legal interest; (2) a defendant with an opposing interest; and (3) an actual controversy between the parties concerning such interests. 735 ILCS 5/2-701 (West 2010). The General Assembly has expressly provided for the entry of declaratory judgments in dissolution-of-marriage cases. In *In re Marriage of Best (Best I)*, 228 Ill. 2d 107, 119 (2008), the supreme court held that "a reviewing court may consider the validity and effect of a declaratory judgment order in a dissolution proceeding, even if it is entered before the final dissolution order, if the prerequisites of the declaratory judgment statute are met." See also 750 ILCS 5/105(a) (West 2010) (incorporating 735 ILCS 5/2-101 *et seq.* (West 2010)).

¶ 30    In *Best I*, the husband petitioned for dissolution of the parties' marriage and, later, moved for a declaratory judgment, seeking a ruling concerning the validity and construction of their premarital agreement.[1]  The supreme court held that, even though a final dissolution order had not been entered, a reviewing court could review the trial court's ruling if the requirements of the declaratory judgment statute were met. *Best I*, 228 Ill. 2d at 116. As is critical to this appeal, the supreme court further declared that the ruling was appealable under Rule 304(a). *Id.* at 113. The court noted that the declaratory judgment only determined the validity of the parties' premarital agreement and construed the attorney fees provision and "did not make any actual awards in the pending dissolution case." *Id.* at 114. Thus, the parties' two requests for relief (declaratory and nondeclaratory) had different statutory bases and were "not so closely related that they must be deemed part of a single claim for relief." *Id.* at 115. In the court's view, the rulings on the premarital agreement terminated a significant part of the dissolution matter and satisfied the termination-of-controversy requirement in the declaratory judgment statute. *Id.* at 117-18.

¶ 31    Relying on *Best I*, respondent contends that jurisdiction here is conferred pursuant to Rule 304(a). We agree. Rule 304(a) governs those circumstances where a judgment in a case involving multiple parties or multiple claims disposes of at least one, but not all, of such parties or claims. *American Country Insurance Co. v. Chicago Carriage Cab Corp.*, 2012 IL App (1st) 110761, ¶ 21. Rule 304(a) provides, in pertinent part:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. Such a finding may be made at the time of the entry of the judgment *or thereafter* on the court's own motion or *on motion of any party*. The time for filing a notice of appeal shall be as provided in Rule 303. *In computing the time provided in Rule 303 for filing the notice of appeal, the entry of the required finding shall be treated as the date of the entry of final judgment.* In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment

---

[1]The motion was apparently filed, as here, in the dissolution action, not in, for example, a chancery court case, separate from the dissolution case.

adjudicating all the claims, rights, and liabilities of all the parties." (Emphases added.) Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

¶ 32    Here, the trial court's declaratory judgment, which addressed claims relating to the premarital agreement, was final on April 8, 2011. The declaratory judgment statute explicitly provides for the finality of declaratory judgments: "The court may, in cases of actual controversy, make binding declarations of rights, *having the force of final judgments*, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any *** contract or other written instrument, and a declaration of the rights of the parties interested." (Emphasis added.) 735 ILCS 5/2-701(a) (West 2010); see also *Djikas v. Grafft*, 344 Ill. App. 3d 1, 10 (2003) ("finality attaches to a declaratory judgment on the date that judgment is entered"). However, here, the trial court's April 8, 2011, order became appealable only on October 31, 2012, by virtue of the court's express written finding that there was no just reason for delaying enforcement or appeal or both. *American Country Insurance*, 2012 IL App (1st) 110761, ¶ 21; see also *Best I*, 228 Ill. 2d at 113. As relevant here, our jurisdiction encompasses only orders that are final and appealable. *American Country Insurance*, 2012 IL App (1st) 110761, ¶ 21. Although the Rule 304(a) finding here was not made until over 17 months later (in an order also denying respondent's motion to reconsider), that delay is of no import because a Rule 304(a) finding may be made at any time. See *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 344 (2001) ("one may request at any time that the trial court add Rule 304(a) language to the final order which disposed of all issues other than sanctions"); see also Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010) ("finding may be made at the time of the entry of the judgment *or thereafter* on the court's own motion or on motion of any party" (emphasis added)). The dissent does not acknowledge or assess the clear language of the rule or the foregoing case.

¶ 33    Furthermore, the fact that respondent filed his motion to reconsider over 17 months after the declaratory judgment does not alter our conclusion. The declaratory judgment was final, but not appealable, on the date it was entered–April 8, 2011. 735 ILCS 5/2-701(a) (West 2010). The order did not become appealable until the court made its Rule 304(a) finding. *Best I*, 228 Ill. 2d at 113. The fact that respondent filed a motion to reconsider in the interim, which prompted petitioner's request for Rule 304(a) language, does not alter this conclusion. The 30-day period for filing a notice of appeal was triggered by the issuance of the trial court's Rule 304(a) language, not by any earlier filings. To hold otherwise, as the dissent suggests, would have the effect of swallowing Rule 304(a) and ignoring *Best I*.

¶ 34    *Pritza v. Village of Lansing*, 405 Ill. App. 3d 634 (2010), upon which the dissent relies and which does not involve a marriage dissolution and does not address *Best I*, does not warrant a different result and, to the extent that it conflicts with *Best I*, we are bound to follow *Best I*. In *Pritza*, an injured village police officer sought a declaratory judgment of uninsured motorist coverage against the village and a risk management pool that provided automobile liability coverage to the village. The trial court dismissed the action (finding that the vehicle was not uninsured), but granted the plaintiff leave to file an amended complaint. The plaintiff subsequently filed an amended complaint, seeking reformation of the risk management pool's agreement (to include a provision for underinsured motorist coverage). The trial court granted the defendants summary judgment (finding that the risk management pool was not an insurance carrier and that as a member the village was self-insured and not subject to an insurance code provision), and the plaintiff appealed both the dismissal and the summary

- 9 -

judgment. The appellate court held that it did not have jurisdiction to review the earlier judgment and dismissed that portion of the plaintiff's appeal. *Id.* at 638. The court determined that the declaratory judgment dismissal was final on the date the dismissal was entered, because it fixed absolutely the rights of the plaintiff and the defendants on the plaintiff's claim for a declaratory judgment of uninsured motorist coverage. *Id.* at 640. However, because the notice of appeal was not filed within 30 days of that final order, the appellate court lacked jurisdiction to consider the issue. *Id.*

¶ 35    It is well established that a trial court loses jurisdiction over a case and the authority to vacate or modify its judgment 30 days after the entry of judgment, unless a timely postjudgment motion is filed. *Gegenhuber v. Hystopolis Production, Inc.*, 277 Ill. App. 3d 429, 431 (1995). A timely postjudgment motion not only extends the trial court's jurisdiction, but also extends the appellate court's potential jurisdiction, the time within which a notice of appeal may be filed, until 30 days after the motion is decided. *Sears v. Sears*, 85 Ill. 2d 253, 258 (1981); *Chen Ying Yang v. Chen*, 283 Ill. App. 3d 80, 85 (1996). However, " '[i]f an order does not resolve every right, liability or matter raised, it must contain an express finding that there is no just reason for delaying an appeal.' " (Internal quotation marks omitted.) *Brown & Kerr, Inc. v. American Stores Properties, Inc.*, 306 Ill. App. 3d 1023, 1028 (1999) (quoting *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 983 (1994)); see also *Longo v. Globe Auto Recycling, Inc.*, 318 Ill. App. 3d 1028, 1033 (2001) (generally speaking, "if an order does not resolve every right, liability or matter raised, it must contain an express finding that there is no just reason for delaying an appeal" pursuant to Rule 304(a) (internal quotation marks omitted)). A final judgment is "a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit." *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982).

¶ 36    In a dissolution context, we disagree with *Pritza* that a declaratory judgment order is final *and appealable* when entered. Although *finality* might attach to a declaratory judgment order on the date it is entered, that order is not *appealable* in a dissolution context absent Rule 304(a) language. *Best I*, 228 Ill. 2d at 113. This is so because another claim is pending–the dissolution claim. *Id.* at 115-18. *Pritza*, again, did not involve a marriage dissolution and is distinguishable or incorrect in other respects. In dismissing the police officer's declaratory judgment action, the trial court also granted him leave to file an amended complaint, which he did. Unlike the declaratory judgment in this case, the *Pritza* ruling was not a final order. Our supreme court has noted that an "order dismissing a complaint with leave to amend is not a final judgment." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 21. The *Pritza* ruling did not absolutely fix the parties' rights. Further, the opinion relied on Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), which applies to judgments that dispose of entire actions. Here, in contrast, the trial court's April 8, 2011, order, as *Best I* instructs, did not dispose of the entire action, because the dissolution claim remained pending. *Best I*, 228 Ill. 2d at 115-18.

¶ 37    In summary, the trial court's April 8, 2011, declaratory judgment was not appealable until the court entered its Rule 304(a) finding on October 31, 2012. Respondent filed his notice of appeal within 30 days of that finding and, thus, this court has jurisdiction over this appeal. Respondent's filing of a motion to reconsider does not alter this conclusion.

¶ 38              B. The Trial Court's Finding That the Agreement's

- 10 -

¶ 39    Turning to the merits, respondent argues first that the trial court erred in declaring valid the premarital agreement's attorney-fee-shifting ban as to child-related issues. He asserts that the attorney-fee-shifting ban is not enforceable as to child-related issues, because it violates public policy by discouraging both parents from pursuing litigation in their children's best interests. For the following reasons, we agree and reverse that portion of the court's order.

¶ 40    A premarital agreement is a contract, and the rules of contract construction apply in interpreting such agreements. *Best II*, 387 Ill. App. 3d at 949. Contract construction presents a question of law, which we review *de novo*. *Id*. A contractual "fee-shifting" provision is an exception to the general rule that a party is responsible for his or her own attorney fees. *Bright Horizons Children's Centers, LLC v. Riverway Midwest II, LLC*, 403 Ill. App. 3d 234, 254 (2010).

¶ 41    Preliminarily, we address petitioner's arguments that respondent has not properly preserved this claim for our review. Petitioner contends that respondent may not contest the validity of the premarital agreement, because: (1) his argument is forfeited where, in his declaratory judgment motion, he asked the trial court to determine the validity of the agreement but he did not allege that it was invalid and unenforceable until 17 months after the trial court determined that it was valid and enforceable; (2) it is waived where he waived maintenance and attorney fees in his counterpetition for dissolution; (3) the doctrine of *laches* applies, where respondent demonstrated unreasonable delay–17 months–in asserting his claim that the agreement is invalid and unenforceable and as a result petitioner has suffered extreme prejudice in that the arbitration has been delayed and stayed and petitioner is incurring substantial attorney fees and costs; and (4) respondent cannot take a position on appeal that contradicts the position he took in the trial court, where, according to petitioner, respondent (a) "admitted that there was 'no dispute' as to the validity of the" agreement, (b) asked the court at various times to enforce certain portions of the agreement, and (c) asked in his counterpetition for dissolution that both parties be barred from receiving maintenance and pay his or her own attorney fees. Petitioner also argues that, even if respondent did not waive his right to request attorney fees, the attorney-fee-shifting ban is not ripe for this court's review because it is "waived" or "moot." Further, she contends that the agreement's provisions are severable and that, even if the attorney-fee-shifting-ban is ripe for this court's review, the agreement's remaining provisions are still valid and enforceable.

¶ 42    We reject petitioner's argument that respondent's claim is forfeited. She contends that he did not question the validity or enforceability of the premarital agreement in his motion for declaratory judgment. This is not so. In his motion, respondent alleged that there was an actual controversy as to the validity and enforceability of the agreement.

¶ 43    As to waiver, in her dissolution petition, petitioner noted that the premarital agreement barred the parties from seeking maintenance. However, in her prayer for relief, she did not request such a ruling from the trial court. In respondent's counterpetition for dissolution, respondent requested in his prayer for relief that both parties be barred from receiving maintenance, that they pay their own attorney fees, and for "such other and further relief as in equity the court deemed just and proper." However, he alleged in his counterpetition that "No agreements have been entered into by the parties with respect to *** maintenance ***." In *In re Marriage of Thornley*, 361 Ill. App. 3d 1067, 1073-74 (2005), the court rejected the husband's argument that the trial court improperly awarded the wife maintenance. The

husband argued that the wife's petition specifically requested an order denying the parties maintenance. The *Thornley* court noted that the wife had raised the issue of maintenance in her petition, where she alleged that there was no agreement as to maintenance and where she prayed for an order denying maintenance and for such other and further relief as the trial court deemed just and equitable. The court held that the trial court had the authority to exceed the relief that the wife had requested and exercised its discretion in doing so. *Id.* The court explained that there was no formal maintenance waiver, but "only a suggestion to the trial court in the pleadings that it was best to resolve the matter by a distribution of property rather than an award of maintenance." *Id.* at 1074. This suggestion "did not deprive the trial court of its discretion to award maintenance. The parties were aware that an award of maintenance was possible. Even if the pleadings were not technically correct, a pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs. 735 ILCS 5/2-616(c) (West 2004)." *Id.* Pursuant to *Thornley*, we reject petitioner's argument that respondent's attorney-fee request is waived. See also *Schlicher v. Board of Fire & Police Commissioners*, 363 Ill. App. 3d 869, 873 (2006) (where a party was able to address all of the arguments it sought to be deemed waived, court declined to invoke waiver).

¶ 44 Next, turning to *laches*, we note that a party may not raise the affirmative defense of *laches*, which must be pleaded and proved, for the first time on appeal. See *National Underground Construction Co. v. E.A. Cox Co.*, 273 Ill. App. 3d 830, 834 (1995). Petitioner responds that she raised the elements necessary to demonstrate *laches* in her emergency motion for an immediate hearing on respondent's motion to reconsider. The defense of *laches* requires a showing that a litigant has exhibited unreasonable delay in asserting a claim and that the opposing party was prejudiced as a result of that delay. *In re Marriage of Smith*, 347 Ill. App. 3d 395, 401 (2004). In her motion, petitioner did not explicitly invoke the *laches* defense. Although she did argue that respondent's actions showed a lack of diligence, she did not address the prejudice element of the defense. Petitioner's motion primarily addressed why respondent's motion did not sufficiently state an appropriate basis upon which to grant a motion to reconsider, such as newly discovered evidence that was not available at the time of the hearing, changes in the law, or errors in the court's previous application of existing law. See, *e.g.*, *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 987 (1987). Finally, petitioner's claim on appeal that she has incurred substantial attorney fees is not developed and is unsupported by citation to supporting evidence in the record. Accordingly, we find it forfeited. See, *e.g.*, *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010) (court may find argument forfeited where it is undeveloped and where party provides no citation to relevant authority); see also Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

¶ 45 We also reject petitioner's argument that respondent is precluded from taking a position on appeal that is inconsistent with the one he took in the trial court. Petitioner contends that respondent admitted in his trial court filings that there was no dispute concerning the validity of the premarital agreement. We reject this argument because it misrepresents and is unsupported by the filings. In paragraph four of his declaratory judgment motion, respondent asserted that there was a controversy concerning the validity and enforceability of the agreement, either in whole or in part. In her response, petitioner admitted this allegation, affirmatively alleged that the burden of proof on this issue, under Missouri law, rests with the party seeking to invalidate the agreement, and argued that the relevant factors weigh in favor of finding the contract valid under both Missouri and Illinois law. In his reply, respondent stated

that, because petitioner admitted the allegation, no dispute existed as to it. We decline to interpret respondent's reply as an admission that there was no dispute as to the agreement's validity and enforceability (and, further, we reject that respondent now takes a contradictory position). It is clear from the parties' filings that they agreed that there is a controversy concerning the agreement's validity and enforceability.

¶ 46    We also reject petitioner's argument that respondent is precluded from contesting the agreement's enforceability because he asked below that certain of its provisions be enforced. In light of her assertion elsewhere in her brief to this court that the agreement's severability clause is enforceable, we find no merit to this argument. Finally, we find forfeited petitioner's argument that the fee-shifting claim is not ripe for this court to review. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 253 (2010) (ripeness defense is subject to forfeiture if not raised in the trial court).

¶ 47    Turning to the merits of respondent's argument, the premarital agreement provides, in section 4.2(d), that, if the parties' marriage is dissolved or in the event of a legal separation:

> "Neither party shall make any claim upon the other for costs or attorneys' fees whether *pendente lite* or final, incurred in seeking or obtaining any such order or decree, notwithstanding any right to costs or attorneys' fees a party otherwise may have pursuant to any statute of any jurisdiction ***."

¶ 48    Respondent contends that the broad wording of section 4.2(d) covers all fees incurred in a dissolution proceeding, including those related to child support, custody, and visitation, and that, in enforcing this provision (when it denied respondent's motion for interim attorney fees), the trial court erred. Respondent notes that a void order may be attacked at any time (such that the court's finding that respondent's motion to reconsider was untimely was an improper basis upon which to reject his argument). He further asserts that, since the attorney-fee-shifting ban is against Illinois public policy, it is unnecessary to determine whether Missouri law controls, and, alternatively, even if it does, no Missouri cases appear to hold to the contrary. Finally, respondent contends that the agreement's severability clause allows the court to strike the attorney-fee-shifting ban as to child-related issues, while upholding the remainder of the agreement as long as it fairly reflects the parties' original understanding.

¶ 49    The Illinois Uniform Premarital Agreement Act (Act) (750 ILCS 10/1 *et seq.* (West 2012)), which applies to any prenuptial agreement executed on or after January 1, 1990, provides that an antenuptial agreement is unenforceable only if the party against whom enforcement is sought proves that: (1) he or she did not execute the agreement voluntarily; or (2) the agreement was unconscionable when it was executed and, before execution of the agreement, the party was not provided a fair and reasonable disclosure of the other's property, did not waive the right to such disclosure in writing, and did not have (and could not reasonably have had) an adequate knowledge of the other's property. 750 ILCS 10/7(a) (West 2012). "The Act omits the previous common law requirements that an enforceable agreement must also be 'fair and reasonable' and must not result in an 'unforeseen condition of penury' for the party challenging the agreement. Thus, the Act expresses a public policy of enforcing contracts as written absent evidence of fraud, duress, or lack of knowledge." *In re Estate of Chaney*, 2013 IL App (3d) 120565, ¶ 19 n.2. The statute does not allow a court to invalidate a premarital agreement merely because it results in a disproportionate allocation of assets to one of the parties.

¶ 50    Here, *Best II* controls. In *Best II*, we considered, on remand from the supreme court, whether the trial court correctly interpreted the attorney-fee clause of the parties' premarital agreement. That clause barred attorney-fee shifting in any court proceeding " 'of and concerning [their] marital relationship or dissolution thereof.' " *Best II*, 387 Ill. App. 3d at 949. We held that child support fell within the foregoing category. *Id.* We determined that litigation concerning the dissolution of the parties' marriage encompassed child support and that, thus, the parties' agreement was intended to include litigation of child support issues. *Id.* at 950-51. We further held that the fee-shifting ban in the agreement was not enforceable as to child-related issues because it "violate[d] public policy by discouraging both parents from pursuing litigation in their child's best interests." *Id.* at 951. We noted that the Act expresses a public policy that " '[t]he right of a child to support may not be adversely affected by a premarital agreement.' 750 ILCS 10/4(b) (West 2006)." *Id.* at 954. Relying on this language and case law, we concluded that the fee-shifting ban was unenforceable because it violated this public policy. Thus, "[s]o long as [the wife] is able to demonstrate an inability to pay attorney fees (and [the husband's] ability to pay them), the agreement will not prevent her from recovering them." *Id.* We affirmed the trial court's declaration "that the premarital agreement does not apply to attorney fees relating to litigation of child-related issues." *Id.*

¶ 51    Pursuant to *Best II*, we hold that the agreement's attorney-fee-shifting ban as to child-related issues violates Illinois public policy and is unenforceable as to those issues. Because it violates Illinois public policy, we need not determine whether Missouri law controls. See *Hussein v. L.A. Fitness International, L.L.C.*, 2013 IL App (1st) 121426, ¶ 11 (in Illinois, a choice-of-law provision is given effect where there is some reasonable relationship between the chosen forum and the parties or transaction and it is not dangerous, inconvenient, immoral, or contrary to Illinois public policy); *Freeman v. Williamson*, 383 Ill. App. 3d 933, 938 (2008) ("So long as a choice of law provision does not contravene Illinois public policy and there is some relationship between the chosen forum and the parties to the transaction, an express choice of law provision will be given full effect."); see also *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 706 (7th Cir. 2004) ("Illinois courts respect a contractual choice-of-law clause if the contract is valid, and the law chosen is not contrary to Illinois's fundamental public policy.").

¶ 52    Finally, we note again that neither party challenges the agreement's severability clause. A contractual severability clause "strengthens the case for the severance of unenforceable provisions because it indicates that the parties intended for the lawful portions of the contract to be enforced in the absence of the unlawful portions." *Abbott-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 21 (1993). The parties argue that, if we conclude that the attorney-fee-shifting ban as to child-related issues violates public policy and is unenforceable, the remainder of the agreement, pursuant to the severability clause, is unaffected by this holding. We agree.

In summary, we reverse the trial court's finding that the attorney-fee-shifting ban was valid and enforceable as to child-related issues.

¶ 53                    C. Denial of Motion to Reconsider for Untimeliness and Lack of New Facts

¶ 54    Next, respondent argues that the trial court erred in denying his motion to reconsider for untimeliness and lack of new facts. He contends that the trial court applied the wrong standard

- 14 -

to assess his motion, focusing only on the motion's timeliness and alleged lack of new facts. For the following reasons, we reject this argument.

¶ 55    The purpose of a motion to reconsider "is to bring to the trial court's attention newly discovered evidence not available at the time of the first hearing, changes in the law, or errors in the previous application of existing law to the facts at hand." *River Village I, LLC v. Central Insurance Cos.*, 396 Ill. App. 3d 480, 492 (2009). Generally, a trial court's decision to grant or deny a motion to reconsider will not be reversed absent an abuse of discretion. *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1078 (2007). However, where the motion was based only on the trial court's application or purported misapplication of existing law, rather than on new facts or legal theories not presented at trial, a reviewing court reviews *de novo* the trial court's decision to grant or deny the motion, *Bank of America, N.A. v. Ebro Foods, Inc.*, 409 Ill. App. 3d 704, 709 (2011). Here, we conclude that, with the exception of the attorney-fee-shifting ban discussed above, the trial court, under either standard of review, did not err in denying respondent's motion.

¶ 56    Respondent's timeliness argument essentially addresses the jurisdictional issue we addressed above; thus, we need not revisit it. As to his argument concerning the lack of new facts, respondent contends that in denying his motion the trial court relied on its misunderstanding that a motion to reconsider must add new facts. In addition, he contends that his motion raised issues concerning: (1) the trial court's erroneous application of existing law, namely, its upholding of the attorney-fee-shifting ban and the premarital agreement as a whole in light of Illinois and Missouri law concerning the conscionability of such agreements; and (2) newly discovered evidence, namely, petitioner's July 10, 2012, deposition statements concerning her alleged nondisclosure of McKelvey Rental.

¶ 57    Again, we discussed the fee-shifting ban above. We otherwise reject his argument that the motion to reconsider should have been granted on the basis of his unconscionability allegations (which he couches as a misapplication-of-existing-law argument) and the alleged newly discovered evidence as to petitioner's concealment of assets. Respondent's attempt to characterize his unconscionability allegations as raising a claim that the trial court misapplied existing law fails because the allegations merely constitute alleged newly discovered (factual) evidence. Viewing it in the proper light, we reject respondent's argument that he presented newly discovered evidence warranting the reversal of the trial court's declaration that the agreement is valid and enforceable. His allegations concerning the execution of the agreement–namely, that he signed the agreement under duress and coercion and that petitioner did not fully disclose her assets–consist of evidence that was available to him when he filed his declaratory judgment motion and in no respect constitute newly discovered evidence. "When a movant seeks reconsideration based on newly discovered evidence, a 'party must show that the newly discovered evidence existed before the initial hearing but had not yet been discovered or was otherwise unobtainable.' " *Simmons v. Reichardt*, 406 Ill. App. 3d 317, 324 (2010) (quoting *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1141 (2004)).

¶ 58    Finally, as to his specific claim that petitioner concealed assets, respondent's argument again fails on the basis that he did not present newly discovered evidence. The crux of his argument is that petitioner's comprehensive financial statement, filed in support of her 2010 dissolution petition, disclosed that she had an interest in McKelvey Rental that she had acquired in 1992 (*i.e.*, before the parties' agreement and marriage). She subsequently stated that she was mistaken about the acquisition date and supported this claim with a sworn

affidavit from Schnieders, who averred that the entity was formed in 2002 (*i.e.*, after the agreement and marriage). Respondent contends that the newly discovered evidence consists of petitioner's failure to explain (at her July 10, 2012, deposition) the agreement's nondisclosure of McKelvey Rental. However, the proper focus is on the comprehensive financial statement, wherein the alleged concealment is brought to the fore. That statement was filed in 2010, well before respondent's March 2011 declaratory judgment motion (and the trial court's ruling thereon the following month). Thus, respondent could have brought this alleged concealment to light in his request for a declaratory judgment, but he did not. Accordingly, we reject his argument that in denying his motion to reconsider the trial court erred on the basis of newly discovered evidence of concealment.

¶ 59 In summary, with the exception of the attorney-fee-shifting ban discussed above, the trial court did not err in denying respondent's motion to reconsider.

¶ 60 D. Premarital Agreement's Validity and Enforceability

¶ 61 Respondent's final argument is that the trial court erred in declaring the premarital agreement valid and enforceable. Specifically, he asserts that: (1) under Missouri law, the agreement is unconscionable and unfair and should be set aside because it was drafted by petitioner's attorney, respondent did not understand its terms and was not represented by counsel, it was signed under exceedingly coercive circumstances (*i.e.*, two hours before the wedding and as a condition thereof), it failed to disclose petitioner's interest in McKelvey Rental (which she acquired in 1992), and its terms are one-sided in petitioner's favor; and (2) under Illinois law, the agreement is unconscionable and should be set aside because respondent signed it under duress and coercion, where he was forced to sign it two hours before the wedding under threat that the wedding would be cancelled, he did not read the document or understand its terms or obtain legal advice, and he was not provided with fair and reasonable disclosure of petitioner's property.

¶ 62 We conclude that, with the exception of the attorney-fee-shifting ban as to child-related issues discussed above, the trial court did not err in finding that the premarital agreement was valid and enforceable. Respondent initially raised the unconscionability/coercion argument in his motion to reconsider. Because he did not raise it in his declaratory judgment motion, respondent has forfeited the argument and we decline to address it in assessing whether the trial court's initial ruling was erroneous. Accordingly, we uphold the trial court's April 8, 2011, order.

¶ 63 E. Sanctions

¶ 64 Finally, we address petitioner's request that we assess sanctions against respondent pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) (appeals not taken in good faith and frivolous appeals). She contends that respondent's arguments are not reasonably well-grounded in fact and not warranted by existing law. Given that we have not rejected all of his claims, we decline petitioner's request to impose sanctions against respondent.

¶ 65                                    III. CONCLUSION

¶ 66        For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with this opinion.

¶ 67        Affirmed in part and reversed in part; cause remanded.


¶ 68        JUSTICE HUTCHINSON, dissenting.

¶ 69        The purpose of a declaratory judgment is to "afford security and relief against uncertainty so as to avoid potential litigation." *First American Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 174 (1995). The majority's holding today promotes uncertainty over certainty. Parties will now be able to revisit a declaratory judgment 17 months, or 17 years, after that order was entered. In other words, after a trial court enters a declaratory judgment, parties will be left to speculate as to whether a trial court will later add language pursuant to Rule 304(a). If such language is added, the parties will then be placed in the exact same position they were in, whether it was 17 months or 17 years, before the trial court entered the judgment and thus will again be uncertain as to their respective rights and obligations. As a result, the holding in this case directly undermines the spirit and the intent of the declaratory judgment statute. Therefore, I would dismiss this appeal due to a lack of jurisdiction.

¶ 70        Section 2-701(a) of the Code of Civil Procedure provides:

> "No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination *** of any *** contract or other written instrument, and a declaration of the rights of the parties interested." 735 ILCS 5/2-701(a) (West 2010).

The declaratory judgment statute enables a court to take hold of a controversy one step sooner than normal. *Beahringer v. Page*, 204 Ill. 2d 363, 373 (2003). " '[T]hat is, after the dispute has arisen, but before steps are taken which give rise to claims for damages or other relief. The parties to the dispute can then learn the consequences of their actions before acting.' " *Kaske v. City of Rockford*, 96 Ill. 2d 298, 306 (1983) (quoting *Buege v. Lee*, 56 Ill. App. 3d 793, 798 (1978)). The declaratory judgment procedure was designed to settle and fix litigants' rights before there has been an irrevocable change in their respective positions that would jeopardize their claims of right. *Beahringer*, 204 Ill. 2d at 373. Thus, as noted, the remedy is intended to "afford security and relief against uncertainty so as to avoid potential litigation." *Netsch*, 166 Ill. 2d at 174.

¶ 71        Because the declaratory judgment statute was designed to promote certainty and relief against uncertainty, I cannot agree with the majority that respondent could appeal from the trial court's declaratory judgment 17 months after the trial court entered that order. Respondent filed a motion for a declaratory judgment pursuant to section 2-701 on March 3, 2011. Respondent's motion did not cite any other statutory provision. The only relief respondent requested was for the trial court to "declare the rights of the parties pursuant to the [premarital agreement] *** and determinate its applicability *** to the dissolution proceeding." On April

8, 2011, the trial court ruled on respondent's motion and issued a judgment. Respondent took no action regarding the trial court's judgment until October 1, 2012, when he filed a motion to reconsider. Respondent's motion to reconsider raised various arguments and asked the trial court to vacate its judgment. In other words, respondent's motion to reconsider asked the trial court to bring the parties back 17 months to step one and place them in the exact same position that they were in when respondent filed his motion for a declaratory judgment in March 2011, and they were once again uncertain as to their respective rights and obligations under the premarital agreement.

¶ 72    The majority relies on our supreme court's ruling in *Best I* to conclude that we have jurisdiction. *Supra* ¶¶ 31-32. In *Best I*, our supreme court held that a reviewing court could consider the validity and effect of a declaratory judgment order, even if the trial court entered that order before entering a final dissolution order, so long as the prerequisites of the declaratory judgment statute were met. *Best I*, 228 Ill. 2d at 119. The court in *Best I* reasoned that a dissolution proceeding and a request for declaratory relief under the declaratory judgment statute have "distinctly different statutory bases" and "were not so closely related that they must be deemed part of a single claim for relief." *Id.* at 115.

¶ 73    As I read *Best I*, our supreme court indicated that the trial court entered language pursuant to Rule 304(a) when it initially ruled on the husband's motion for a declaratory judgment. *Best I*, 228 Ill. 2d at 110. I note that the opinion is silent as to whether the husband appealed from the trial court's declaratory judgment order within 30 days of that order's entry. The court in *Best I* did not speak to whether a party could request adding Rule 304(a) language to a declaratory judgment order 17 months after the trial court entered that order. Thus, I do not read *Best I* as broadly as the majority does and do not believe that it is controlling under the specific circumstances of this case.

¶ 74    Rather, I maintain that the rationale and holding in *Pritza* are analogous to this case. In *Pritza*, the plaintiff filed an action for a declaratory judgment, seeking uninsured motorist coverage from the Illinois Municipal League Risk Management Association (IMLRMA) and damages resulting from the IMLRMA's withholding of benefits. *Pritza*, 405 Ill. App. 3d at 637. On October 2, 2008, the trial court dismissed the plaintiff's complaint, ruling that the vehicle driven was not uninsured. The trial court granted the plaintiff leave to file an amended complaint, rendering the dismissal nonfinal. See *id.* Thereafter, the plaintiff filed an amended complaint, seeking reformation of the IMLRMA agreement to include underinsured motorist coverage. *Id.* On December 8, 2009, the trial court granted summary judgment in the defendants' favor. *Id.* at 638.

¶ 75    The plaintiff attempted to appeal both the trial court's declaratory judgment order and its summary judgment. The reviewing court concluded that it did not have jurisdiction over the declaratory judgment order. *Id.* at 639. In reaching its determination, the reviewing court expressly rejected the plaintiff's argument that the declaratory judgment order was not immediately appealable because the order did not contain language pursuant to Rule 304(a). *Id.* The court noted that "it is *well established* that a declaratory judgment has the force of a *final* judgment with respect to the rights of the parties subject to that judgment." (Emphases added.) *Id.* Quoting section 2-701(a) of the Code, the court noted that the finality of a declaratory judgment was expressly reflected in the plain language of the statute, which provided that a court may make a binding declaration " '*having the force of final judgments*.' " (Emphasis in original.) *Id.* (quoting 735 ILCS 5/2-701(a) (West 2008)). The court noted that

- 18 -

finality attached to a declaratory judgment on the date the judgment was entered and that the trial court's declaratory judgment order "fixed absolutely the rights of plaintiff and defendants on plaintiff's claim for declaratory judgment for uninsured motorist coverage." *Id.* at 640. Thus, the plaintiff was required to appeal that order within 30 days. *Id.*

¶ 76 The reasoning in *Pritza* is directly applicable to this case. Here, respondent is substantively making the *exact* argument that the court in *Pritza* rejected; that is, that the trial court's ruling on his declaratory judgment action was not immediately appealable because it did not contain Rule 304(a) language. I recognize, as the majority emphasizes, that *Pritza* involved a declaratory judgment with respect to uninsured motorist coverage, whereas this case involves a declaratory judgment and a dissolution proceeding. However, the legal principle is sound with respect to the finality of a declaratory judgment order.

¶ 77 The essence of the holding in *Pritza* is to treat a declaratory judgment order as being immediately appealable. Treating such orders as final and immediately appealable is consistent with the spirit and purpose of the declaratory judgment statute. It is my position that, not only did the trial court err when it considered respondent's request to revisit the declaratory judgment 17 months later, this court should not be entertaining an appeal based on this procedure. Thus, I submit that a declaratory judgment is final under Illinois Supreme Court Rule 303 (see *Pritza*, 405 Ill. App. 3d at 640 (quoting Ill. S. Ct. R. 303 (eff. May 30, 2008))) and that, when part of a larger lawsuit, be treated as immediately appealable under Illinois Supreme Court Rule 304(b) (eff. Feb. 26, 2010). Therefore, I respectfully dissent.