2019 IL App (2d) 180505
No. 2-18-0505
Opinion filed September 10, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF DONNA SLESSER, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
|     Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 15-D-2434 |
| JAMES D. SLESSER, | ) ) | Honorable John W. Demling, |
|     Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice Birkett and Justice Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, James D. Slesser, appeals the trial court's findings in its judgment for the

dissolution of his marriage to petitioner, Donna Slesser. Specifically, respondent contends that

the trial court (1) incorrectly interpreted his authority pursuant to his father's trust, the Revocable

Living Trust of James A. Slesser; (2) incorrectly interpreted his authority under his mother's

trust, the Revocable Living Trust of Dorothy M. Slesser; (3) ignored his responsibilities as

trustee of both trusts; (4) applied the wrong legal standard when it looked beyond the "four

corners" of lien documents in determining that the validity of alleged loans had not been shown

by a preponderance of the evidence; and (5) erred in determining the fair-market value of marital

property known as Lot 7. For the reasons that follow, we affirm.

¶ 2                                              I. BACKGROUND

¶ 3      Petitioner and respondent were married on September 27, 1980. In late 1991 or early 1992, respondent incorporated JDS Homes, a construction business. In 2006, JDS Homes purchased a parcel of land in Burr Ridge known as the Crosscreek Subdivision. The land was divided into 10 separate lots. With the exception of Lot 7, all of the lots were developed and sold. In 2012, respondent incorporated JDS Home Builders. Lot 7 is the primary asset of JDS Homes and JDS Home Builders.

¶ 4      On December 1, 2015, petitioner filed for dissolution of the marriage. On July 27, 2017, respondent filed an amended petition for declaratory judgment. In his petition, respondent alleged:

> "During the development of the Crosscreek Subdivision, hundreds of thousands of dollars were loaned to JDS by two trusts established by [respondent's] parents, the Revocable Living Trust of James A. Slesser dated December 13, 1991[,] and the Dorothy M. Slesser Trust dated December 13, 1991, *** and were used by JDS to make interest and required principal payments on the Hinsdale Bank loan, real estate tax payments on the Crosscreek Subdivision property, and fees and miscellaneous expenses related to the Hinsdale Bank loan."

Respondent further alleged that the funds from his parents' trusts were "transferred to collateral accounts established at Wayne Hummer for the benefit of each trust, then to a holding account at Hinsdale Bank and, finally, disbursed as needed for the various expenses related to the Hinsdale Bank loan and the development of the Crosscreek Subdivision property." Respondent then averred that "the loans from the Slesser Trusts to JDS were memorialized in two separate mortgages for $300,000 each, both of which were recorded against the undivided Crosscreek

land parcel on or about February 5, 2010." Respondent sought a declaration that the funds transferred from his parents' trusts created valid and enforceable liens for $300,000 each against Lot 7, "as marital liabilities subject to equitable allocation between the parties as part of the overall division of the marital estate."

¶ 5    On August 23, 2017, petitioner filed her response to respondent's petition. She denied its allegations and demanded strict proof, as respondent had not provided copies of bank statements reflecting that the funds were loaned from the trusts and that deposits were made into either a collateral account or a holding account. Petitioner further stated that the mortgages recorded against Lot 7 were not legitimate loans, because they were intended to benefit respondent.

¶ 6    The trial court ordered respondent's petition for declaratory judgment to be taken with the trial. The trial was held October 2 through 5, 2017. The trial court's findings on the effect and validity of the liens recorded against Lot 7 are the crux of this appeal. We will limit our recitation of the facts and the evidence presented at trial to those surrounding that issue.

¶ 7    Respondent's Exhibit No. 30 was his father's trust. Respondent's father was named trustee, with respondent named as trustee in the event that his father was unable to properly manage his affairs. Under article I of the trust, the trustee was provided with the power to "withdraw any part of all of the net income or principal of the trust."

¶ 8    Respondent's Exhibit No. 31 was the first amendment to his father's trust, dated July 2, 1998. The amendment replaced the second paragraph of article V with the following provision: "If I predecease my spouse, at the time of my death the trustee shall divide the trust property into two separate trusts known as the Marital Trust and the Family Trust ***."

¶ 9    Respondent's Exhibit No. 32 was a 2005 amendment to his father's trust. In that amendment, respondent's father changed the trustee designation to name himself and respondent

as co-trustees. That amendment also deleted article I of the trust in its entirety and replaced it with the following:

> "The trustee shall have the power to withdraw any part or all of the net income and principal of the trust for any benefit. Any net income not withdrawn shall be added to the principal. *** In all cases, any acting trustee may sign for my trust, solely and without the signature of the other trustee. Only one signature of an acting trustee is necessary to transfer property or conduct any of the business of my trust ***."

¶ 10   Respondent's Exhibit No. 270 was his mother's trust. Respondent's father was named trustee of that trust and respondent was named trustee if his father was unable to properly manage his financial affairs. Article I of the trust stated that the trustee "shall have power to withdraw any part or all of the net income and principal of the trust for my benefit." Respondent's Exhibit No. 38 was the July 2, 1998, first amendment to his mother's trust, which detailed circumstances if his father predeceased her.

¶ 11   Respondent testified at trial that JDC Homes purchased the Crosscreek Subdivision in 2006 with a loan from Suburban Bank for $1.7 million. However, that amount did not equal the total purchase price of Crosscreek, because the then-owner took back a note. On December 31, 2017, JDS Homes received a loan from Hinsdale Bank & Trust (Hinsdale Bank) for, according to respondent, $4,780,634. The note showed an original indebtedness of $1,746,791.30. According to respondent, this amount was used to pay off the loan from Suburban Bank. During 2007 and 2008, all payments on the Hinsdale Bank loan increased JDS Homes' indebtedness, due to what respondent characterized as an interest reserve. Respondent stated that the increases reflected interest, property tax payments, and improvements to the subdivision. At the end of 2008, the amount due on the loan was $3,301,509.18.

¶ 12    At the end of 2009, the amount due on the loan had increased to $3,587,634. Respondent testified that, at the end of 2009 and the beginning of 2010, he made payments to Hinsdale Bank on the loan with transfers from his parents' trusts. However, respondent was unable to provide evidence of these transfers. The only evidence he provided concerning payments to the bank was Exhibit No. 44, a running balance sheet with handwritten notes detailing large payments made from the sale of lots from the Crosscreek Subdivision. The balance sheet shows an ultimate loan payoff on June 5, 2015, which was accomplished through two payments, in the amounts of $136,000 and $27,975.47. No notes on the balance sheet, or any other bank or business records, were provided to show the source of those funds.

¶ 13    Respondent's father died in April 2008. Respondent testified that he did not make the requisite transfers into a family trust, pursuant to article V of his father's trust, because he did not "understand it that way." No funds were withdrawn and no loans were made from the trust before his father died. In October 2009, respondent's attorney prepared two mortgages. The first mortgage listed JDS Homes as the lender and the Dorothy M. Slesser Trust as the borrower of $300,000. The second mortgage listed JDS Homes as the lender and the James A. Slesser Trust as the borrower of $300,000. Respondent characterized the transposition of the lenders and the borrowers on the mortgages as "in error." The mortgages were recorded on February 5, 2010.

¶ 14    Respondent admitted that, when the mortgages were recorded, $300,000 had not been paid from either trust to JDS Homes or himself. Respondent testified that he filed the mortgage liens for those amounts because he "knew money was being taken out and being borrowed ***." He further admitted that he had not made any repayments on the alleged loans.

¶ 15    Respondent testified that the Hinsdale Bank loan was paid down with either proceeds from the sale of Crosscreek Subdivision lots or funds from his parents' trusts. He averred that

Hinsdale Bank's lien on Lot 7 was purchased by his parents' trusts on June 5, 2015. This agreement was memorialized through an "Assignment of Mortgage and Assignment of Rents" between Hinsdale Bank, the "James D. Slesser Trust," and the Dorothy M. Slesser Trust. Respondent testified that the reference to the James D. Slesser Trust was in error, as no such entity exists. The agreement denotes that the trusts agreed to purchase certain documents in connection with the Hinsdale Bank loan and reflects a purchase price of $240,000. Respondent stated that Hinsdale Bank's lien against Lot 7 was never released but, rather, was assigned to the trusts, as they had bought the right to enforce its terms. The "Assignment of Mortgage and Assignment of Rents" was recorded on July 30, 2015.

¶ 16    Petitioner testified that she did not believe that any money was owed to respondent's parents' trusts regarding Lot 7. Her belief was based on the "use of collateral that [respondent's] father allowed him to use and also the fact he didn't sign anything to repay it." She stated that she did not hear or participate in any conversation in which respondent discussed repaying the trusts. She admitted that Lot 7 was a marital asset but said that she was unaware of the existence of any liens on that property.

¶ 17    The trial court made the following findings regarding the mortgages and liens on Lot 7:

"[T]he most contentious issue at trial was the value of JDS Homes and JDS Home Builders. It is acknowledged that the primary asset of JDS Homes is a real estate lot, one single real estate lot with a value of between [$400,000] and $450,000. The lot is the last in a subdivision that has been developed and the respondent has been holding that lot to use as a design build contract.

There is no dispute with respect to the value of the lot. The dispute lies with the efficacy and validity of certain liens which have been placed on the real estate.

\*\*\*

The collateralization with respect to the acquisition of the initial land was through Hinsdale Bank. Actually it was through Suburban Bank and then finally Hinsdale Bank collateralized it to pay off the Hinsdale Bank.

In addition to the land acquired, \*\*\* the loan was collateralized by certain trusts and the parties' marital real estate, marital home.

At some point, Hinsdale Bank drew payments from the trusts. These trusts eventually negotiated a purchase of the Hinsdale Bank collateralization.

Under the terms of [respondent's] father's trust, [respondent] had the power to withdraw income and principal for any purpose. The money withdrawn was moved to an account operated under his name. The documents prepared for the purchase of the Hinsdale loan were in [respondent's] name, not the trust.

The evidence is not clear and does not show by the preponderance of the evidence that the transactions were actual loans or funds which [respondent] was authorized under the trust documents to withdraw, as opposed to withdrawals on his own behalf for his own benefit.

Again, the evidence was not clear that the transactions were actual loans or funds, but rather were moneys [*sic*] which [respondent] authorized under the trust documents to withdraw \*\*\* on his own behalf for his own benefit.

While the liens on the property on behalf of the trust may be effective and technically valid, [respondent's] personal obligation on the loans and the actual validity of the loans themselves has not been shown by a preponderance of the evidence.

\*\*\*

Respondent *** is awarded JDS Homes and JDS Home Builders, which has a collective value of between [$400,000] and $450,000. [Respondent] is ordered to pay [petitioner] $125,000 for her interest in JDS Homes and JDS Home Builders.

Judgment will enter against [respondent] and constitute a lien on the property held by JDS Homes. ***

[Petitioner] is awarded a less disproportionate amount of the business, which is between 31 and 27 percent based on the fact that JDS Homes and JDS Home Builders represents the primary asset that [respondent] utilizes to generate his income, a portion of which he will pay as maintenance."

¶ 18    On May 31, 2018, the trial court issued its written judgment for dissolution of marriage. The judgment reflects the findings above, although it places a value of between $400,000 and $425,000 on Lot 7. This appeal followed.

¶ 19                                   II. ANALYSIS

¶ 20    On appeal, respondent contends that the trial court (1) incorrectly interpreted his authority pursuant to his father's trust; (2) incorrectly interpreted his authority under his mother's trust; (3) ignored his responsibilities as trustee of both trusts; (4) applied the wrong legal standard when it looked beyond the "four corners" of the lien documents in determining that the validity of the alleged loans had not been shown by a preponderance of the evidence; and (5) erred in determining Lot 7's fair-market value. We begin our analysis with respondent's first three contentions.

¶ 21    In his amended petition for declaratory judgment, respondent requested the trial court to declare that the funds transferred from his parents' trusts created valid and enforceable liens for $300,000 each against Lot 7, "as marital liabilities subject to equitable allocation between the

parties as part of the overall division of the marital estate." The trial court ordered respondent's petition to be taken with the trial. Section 2-701(a) of the Code of Civil Procedure provides:

"No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination *** of any *** contract or other written instrument, and a declaration of the rights of the parties interested." 735 ILCS 5/2-701(a) (West 2016).

No technical form is prescribed for a declaration of rights in a suit for declaratory judgment, and it is sufficient if the rights can be ascertained from the court's findings in view of the controversy presented. *City of Quincy v. Sturhahn*, 18 Ill. 2d 604, 610-11 (1960). "It is not necessary that a declaratory judgment shall use the phrase 'the court declares that rights of plaintiffs (or defendants) to be,' as long as the court actually passes upon or adjudicates the issues raised by the pleadings." *Id*. at 611. Arguments not raised in a declaratory judgment petition are forfeited on appeal and this court will not address whether the trial court's findings were erroneous. See *In re Marriage of Heinrich*, 2014 IL App (2d) 121333, ¶ 62.

¶ 22    In finding that respondent did not show by a preponderance of the evidence that the recorded mortgages represented actual loans from the trusts to respondent as opposed to just money respondent withdrew for his own benefit, the trial court adjudicated the issues raised in the declaratory judgment petition. Respondent's petition did not raise any issues related to the language of the trusts or his obligations as trustee under that language. Therefore, respondent's first three contentions are forfeited, as they were never raised before the trial court.

¶ 23    Respondent next contends that the trial court "applied the wrong legal standard when it looked beyond the four corners of the lien documents in determining that [respondent's] personal obligation on the loans and the actual validity of the loans themselves had not been shown by a preponderance of the evidence." Respondent's argument here seems to be that the mortgage documents contain no ambiguity and must, therefore, be considered only on their face. He asks this court to apply the *de novo* standard of review to this issue, as it involves the interpretation of mortgage language. See *3432 West Henderson Building, LLC v. Gizynski*, 2017 IL App (1st) 160588, ¶ 22 (a reviewing court must interpret the language of a mortgage under the *de novo* standard of review, which is applied to all contracts).

¶ 24    To contend that the mortgage documents contain no ambiguity strikes us as slightly disingenuous, considering the fact that the documents list JDS Homes as the lender and respondent's parents' trusts as the borrower. That point notwithstanding, the trial court's findings on the validity of the alleged loans were based upon a preponderance of the evidence. When a trial court makes findings by a preponderance of the evidence in a civil matter, a reviewing court will reverse those findings only if they are against the manifest weight of the evidence. *Best v. Best*, 223 Ill. 2d 342, 348-49 (2006). A decision is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on the evidence. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44.

¶ 25    Respondent presented no evidence to illustrate any obligation to repay his parents' trusts. The trial court was presented with evidence that respondent, at some point, exercised his authority as trustee under each trust to withdraw funds and that he did so to purchase the Hinsdale Bank loan documents. Those funds were moved to an account in respondent's name,

not in the names of his parents' trusts. When asked to provide proof of an actual loan, respondent could not do so. The mere fact that respondent had his attorney draft and record mortgages, without evidence of an obligation to actually repay the trusts any amount of money, is not sufficient to create an encumbrance on Lot 7 and reduce its value. As such, we agree with the trial court's determination that "the evidence is not clear and does not show by the preponderance of the evidence that the transactions were actual loans or funds which [respondent] was authorized under the trust documents to withdraw, as opposed to withdrawals on his own behalf for his own benefit."

¶ 26    We now come to respondent's final contention. Respondent believes that the trial court's determination that Lot 7's fair-market value was between $400,000 and $450,000 was against the manifest weight of the evidence. Again, respondent directs us to acknowledge $600,000 in debt obligations to the trusts. The evidence presented at trial does not support this assertion.

¶ 27    The evidence respondent presented at trial indicated that Lot 7 was listed for sale at $440,000. The evidence does not show that respondent had any actual obligation to repay a loan or any other indebtedness. Without such evidence, there is nothing to suggest that the mortgages actually encumbered or reduced the value of Lot 7. The trial court found that the mortgages, while potentially valid, do not show any obligation for respondent to repay a valid loan. This finding is not against the manifest weight of the evidence, and we will not disturb the trial court's valuation of Lot 7.

¶ 28    For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 29    Affirmed.