No. 2--05--0947 & 2--05--1001 cons.    Filed: 1-9-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| STEVEN RICHARD DEVORE BEST, | ) | of Lake County. |
| | ) | |
| Petitioner and Counterrespondent- | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | No. 04--D--237 |
| | ) | |
| ANGELA K. FARLOW BEST, | ) | Honorable |
| | ) | Sarah P. Lessman and |
| Respondent and Counterpetitioner- | ) | Jorge L. Ortiz, |
| Appellee. | ) | Judges, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Petitioner and counterrespondent, Steven Richard Devore Best, appealed the trial court's decision to grant declaratory judgment in favor of respondent and counterpetitioner, Angela K. Farlow Best, on the issue of whether the parties' premarital agreement prohibited petitioner's being compelled to pay respondent's attorney fees related to child support issues. Without reaching the merits of the issue, we reversed the trial court's judgment on the ground that declaratory judgment was an improper circumvention of the process for certifying an interlocutory appeal. In re Marriage of Best, 369 Ill. App. 3d 254 (2006). The supreme court then reversed our holding that declaratory judgment was improper and remanded the matter to this court to decide on the merits whether the trial court correctly interpreted the attorney fees clause of the premarital agreement. In re Marriage of Best, 228 Ill. 2d 107 (2008). Pursuant to the supreme court's decision, we now consider that issue.

For the reasons that follow, we hold that the agreement was intended to encompass fees incurred in litigation of custody and other child-related issues, but we deem the agreement to be against public policy (and therefore unenforceable) as applied to the child-related issues.

We begin by interpreting the intended scope of the agreement. Premarital agreements are contracts, and thus the rules governing the interpretation of contracts apply. See In re Marriage of Murphy, 359 Ill. App. 3d 289, 300 (2005). When a contract is unambiguous, a court must decide the intent of the parties solely from the contract's plain language. FTI International, Inc. v. Cincinnati Insurance Co., 339 Ill. App. 3d 258, 259-60 (2003). Construction of a contract presents a question of law, subject to de novo review. Dean Management, Inc. v. TBS Construction, 339 Ill. App. 3d 263, 269 (2003).

As relevant here, the parties' premarital agreement provided that "[t]he parties acknowledge, understand and agree that in the event of any court proceeding of and concerning their marital relationship or dissolution thereof, that [sic] each party shall pay and be responsible for payment of their own respective attorney fees and all ancillary costs incurred in connection with any such proceeding." Because the bar on shifting attorney fees was intended to apply to any court proceeding "of and concerning [the parties'] marital relationship or dissolution thereof," the key question for us is whether child support "concern[s] [the parties'] marital relationship or dissolution thereof." We conclude that it does.

The plain language of the premarital agreement indicates that its prohibition on fee-shifting applies in either of two types of litigation: that which concerns the parties' marital relationship and that which concerns the dissolution of the marital relationship. The first type of litigation does not encompass child support. The term "marriage," defined as "[t]he legal union of a man and woman

as husband and wife" (Black's Law Dictionary 986 (7th ed. 1999)), describes a relationship between two spouses, not a relationship between two parents and their children. Cf. In re Estate of Zenkus, 346 Ill. App. 3d 741, 745 (2004) (party's capacity as a spouse considered separate from her capacity as guardian of the parties' child).[1] Petitioner's child support obligation arises, not out of the parties' marital relationship--indeed, the child was conceived prior to the marriage--but rather out of the fact of his paternity. See 750 ILCS 45/14 (West 2006) (providing for child support judgments against parents). Thus, the issue of child support is not connected to the parties' marital relationship.

However, the second type of litigation described in the premarital agreement--litigation concerning the dissolution of the parties' marriage--does encompass child support. On this point, petitioner directs us to our supreme court's decision in In re Marriage of Leopondo, 96 Ill. 2d 114 (1983), which we find instructive. In Leopando, the supreme court described the relationship between marital dissolution actions and custody and support issues as follows:

"A petition for dissolution advances a single claim; that is, a request for an order dissolving the parties' marriage. The numerous other issues involved, such as custody, property disposition, and support are merely questions which are ancillary to the cause of action. [Citation.] They do not represent separate, unrelated claims; rather, they are separate issues

---

[1]Petitioner argues that Zenkus offers no guidance here because its holding centered on the idea that a premarital agreement barring her from becoming an administrator of her ex-husband's estate did not prohibit her from seeking to become an administrator in her capacity as guardian of the parties' child, as opposed to her individual capacity. Petitioner notes that, here, respondent seeks fees for her own attorney and thus in her individual capacity. However, we cite Zenkus for the limited proposition that there is a distinction between a marital and a parental relationship.

relating to the same claim. In fact, it is difficult to conceive of a situation in which the issues are more interrelated than those involved in a dissolution proceeding. Should the trial court decline to grant the petition for dissolution, no final relief may be obtained relevant to the other issues involved. On the other hand, where a dissolution of marriage is granted, a determination as to which party receives custody will necessarily affect how much, if any, support and maintenance are paid. Practically speaking, then, until all of the ancillary issues are resolved, the petition for dissolution is not fully adjudicated." (Emphases in original.) Leopando, 96 Ill. 2d at 119.

As petitioner argues, our supreme court indicated quite clearly in Leopando that a child support issue is inextricably tied to the dissolution action in which it arises, so much so that the dissolution action cannot be considered fully adjudicated until child support is resolved. We must therefore conclude that the issue of child support "concern[s] [the parties'] marital relationship or dissolution thereof," so that the premarital agreement would bar fee-shifting for costs incurred in connection with child support.

However, even though we determine that the agreement's ban on fee-shifting was intended to include litigation of child support issues, the question remains whether such an agreement is enforceable as to those issues. As explained below, we hold that the fee-shifting ban in the agreement is not enforceable as to child-related issues, because it violates public policy by discouraging both parents from pursuing litigation in their child's best interests.

A court must not enforce a private agreement that is contrary to public policy. O'Hara v. Ahlgren, Blumenfeld & Kempster, 127 Ill. 2d 333, 341 (1989). "The public policy of this State is reflected in its constitution, its statutes and its judicial decisions." O'Hara, 127 Ill. 2d at 341.

"Whether or not a contract is contrary to public policy depends on the peculiar facts and circumstances of each case." O'Hara, 127 Ill. 2d at 341-42. That said, some contracts per se violate public policy. See, e.g., Dargis v. Paradise Park, Inc., 354 Ill. App. 3d 171, 183 (2004) (holding that public policy prohibits all exculpatory contracts that protect against liability for willful and wanton misconduct). A court may, and indeed should, consider sua sponte whether a contract provision violates public policy. See 6 R. Lord, Williston on Contracts §12:5, at 58 (4th ed. 1995); see also First Trust & Savings Bank of Kankakee v. Powers, 393 Ill. 97, 103 (1946) (holding that a court of equity should refuse to enforce a provision that is against public policy, even if no party has raised the point).

The law severely limits on public policy grounds the enforceability of contracts affecting the custody and support of minor children. Illinois law per se rejects premarital agreements that impair child-support rights or specify custody. In In re Marriage of Nuechterlein, 225 Ill. App. 3d 1, 6-7 (1992), the appellate court held that, because a trial court must independently decide the proper custody arrangement based on current conditions, a trial court can consider a premarital agreement on custody but cannot in any way be bound by it. Premarital agreements limiting child support are also improper; the Illinois Uniform Premarital Agreement Act provides that "[t]he right of a child to support may not be adversely affected by a premarital agreement." 750 ILCS 10/4(b) (West 2006). The pivotal question here is whether a fee-shifting bar governing child-related issues violates this public policy.

We find but one Illinois decision, In re Marriage of Kessler, 110 Ill. App. 3d 61, 74-75 (1982), that addresses the acceptability of a fee-shifting bar akin to the one at issue here in the context of litigation of child-related issues. In Kessler, the parties had a marital settlement

agreement that provided that " 'each party will pay his or her attorney's fees and court costs incurred either in connection with this Agreement or in connection with any proceedings involving this Agreement.' " Kessler, 110 Ill. App. 3d at 74. Postdissolution, a dispute arose about, among other things, the proper level of child support. The Kessler court held:

"[T]he terms of the agreement with respect to attorney fees are clear and unequivocal, and it was freely and knowingly entered into by both parties and approved by the court. Furthermore, petitioner has not demonstrated a financial inability to pay her portion of the fees as originally agreed. Under these circumstances, we find that a binding interparty contract resulted which is not repugnant to another rule of law nor is it against public policy." Kessler, 110 Ill. App. 3d at 75.

Although the court in Kessler did not explicitly so state, the above passage implies that it would have deemed the fee-shifting bar unenforceable if the petitioner had been able to demonstrate an inability to pay.

With only limited guidance from Illinois authorities, we turn to foreign cases considering the acceptability of fee-shifting bars as applied to child-related issues. Although those cases, which were decided based on the laws of states whose statutory environments and public policies do not necessarily match our own, do not speak directly to the issue of whether such fee-shifting bars violate Illinois public policy, the cases nevertheless provide some guidance.

In In re Marriage of Ikeler, 161 P.3d 663 (Colo. 2007), the Colorado Supreme Court considered the enforceability of a fee-shifting bar in a marital agreement. The court noted that a fee-shifting bar could harm the children by "substantially impair[ing]" "the lesser-earning spouse's ability to effectively litigate the issues related to the children," which would, "in turn, *** negatively impact

the court's ability to assess the best interests of the children" (Ikeler, 161 P.3d at 670-71), and it stated that a fee-shifting bar would violate public policy "where one spouse lacks the financial resources to litigate the dissolution, and the case involves issues of parental responsibilities and child support" (Ikeler, 161 P.3d at 667). Thus, Colorado follows the rule implied in Kessler: a fee-shifting bar is unenforceable where the spouse prosecuting the child's interests demonstrates an inability to pay.

Courts in California and Washington have articulated their states' policies on fee-shifting bars in a different way. In In re Marriage of Joseph, 217 Cal. App. 3d 1277, 266 Cal. Rptr. 548 (1990), a decision involving postdissolution litigation, a California appellate panel recognized an extensive state history of refusing to enforce fee-shifting bars on child-related issues. The court reasoned that a parent litigating a child-related issue is representing not only his or her own interest, but also the child's, and the court therefore concluded that barring fee shifting on litigation of child-related issues "abridge[s] the courts' ability to act on behalf of the children." Joseph, 217 Cal. App. 3d at 1284, 266 Cal. Rptr. at 552. Accordingly, the court held that the agreement violated public policy and was unenforceable. In In re Marriage of Burke, 96 Wash. App. 474, 980 P.2d 265 (1999), a Washington state appellate court reached the same conclusion. It noted that "prenuptial agreements generally cannot affect the rights of the parties' children" (Burke, 96 Wash. App. at 477, 980 P.2d at 267) and that "[t]he state's interest in the welfare of children requires that the court have the discretion to make an award of attorney fees and costs [for litigation of child-related issues] so that a parent is not deprived of his or her day in court by reason of financial disadvantage." Burke, 96 Wash. App. at 480, 980 P.2d at 268. In reaching their holdings regarding whether the fee-shifting bars presented

were enforceable, the Joseph and Burke courts, unlike the courts in Kessler and Ikeler, did not reference the prosecuting spouse's ability to pay.

At first glance, it would appear that Joseph and Burke articulated a much stronger rule than did Kessler and Ikeler: Joseph and Burke declared a fee-shifting bar unenforceable per se, without reference to the prosecuting spouse's ability to pay, while Kessler and Ikeler implied that such a bar would be unenforceable only where the prosecuting spouse demonstrated an inability to pay. However, at least under Illinois law, there is little, if any, practical difference between these two seemingly disparate rules. In Illinois, the party seeking an award of attorney fees must establish his or her inability to pay and the other spouse's ability to do so. In re Marriage of Schneider, 214 Ill. 2d 152, 174 (2005). Therefore, a spouse who seeks fees after signing a premarital agreement such as that at issue here must overcome two hurdles: the fee-shifting bar and the requirement that he or she demonstrate need. If we were to apply the rule from Joseph and Burke and declare the agreement per se unenforceable as to child-related issues, respondent would still be required to demonstrate an inability to pay fees before she could recover them. Likewise, if we were to apply the rule from Kessler and Ikeler and declare the agreement unenforceable as to child-related issues only if respondent demonstrated an inability to pay, respondent could recover fees once she demonstrated need. The real difference between the two rules is that the per se Joseph and Burke rule separates the two hurdles facing a party seeking fees, while the Kessler and Ikeler rule combines them into a single step.

We conclude that the reasoning in the above cases reflects Illinois public policy with respect to fee-shifting bars on child-related issues. We therefore conclude that, as applied here, the fee-shifting bar violates Illinois public policy requiring that "[t]he right of a child to support may not be

adversely affected by a premarital agreement." 750 ILCS 10/4(b) (West 2006). So long as respondent is able to demonstrate an inability to pay attorney fees (and petitioner's ability to pay them), the agreement will not prevent her from recovering them.

For the foregoing reasons, we conclude that the attorney fee clause was intended to govern litigation of child-related issues but is nevertheless unenforceable with regard to those issues because it contravenes public policy. We therefore affirm the judgment of the circuit court of Lake County declaring that the premarital agreement does not apply to attorney fees relating to litigation of child-related issues.

Affirmed.

BOWMAN and GROMETER, JJ., concur.