2020 IL App (1st) 191998-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
June 2, 2020

No. 1-19-1998

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | |
| MARY KATHERINE TOUHY-SILVERMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
|       Petitioner/Counter-Respondent-Appellant, | ) | Cook County |
| | ) | |
| | ) | No. 16 D 10773 |
|   and | ) | |
| | ) | The Honorable |
| JEFFREY SILVERMAN, | ) | David E. Haracz, |
| | ) | Judge Presiding. |
|       Respondent/Counter-Petitioner-Appellee. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:* Trial court's declaratory judgment, which interpreted parties' premarital agreement as providing that husband's "ownership and other rights with respect to his nonmarital property remain the same even if the earnings, income, and other benefits he received were derived from personal efforts during the marriage," is affirmed.

¶ 2    In this action for dissolution of the marriage of the petitioner/counter-respondent, Mary Katherine Touhy-Silverman (Mary Kay), and the respondent/counter-petitioner, Jeffrey Silverman (Jeffrey), the parties filed cross-motions for declaratory judgment that sought the trial court's

interpretation of the parties' premarital agreement. The trial court entered an order granting the declaratory judgment sought by Jeffrey and denying the declaratory judgment sought by Mary Kay. Mary Kay appeals this order of the trial court. For the reasons that follow, we affirm.

¶ 3                                                  I. BACKGROUND

¶ 4        On September 22, 2005, six days before their marriage, Mary Kay and Jeffrey entered into the premarital agreement at issue in this appeal. Mary Kay was then 48 years old, and her marriage to Jeffrey was to be her first. Jeffrey was then 59, and the marriage was to be his fourth. At that time, Jeffrey was involved in the business of commodities trading, and, according to a schedule of his disclosed assets that was incorporated into the to the premarital agreement, he came into the marriage owning assets valued at approximately $68 million. Mary Kay's schedule of assets indicates that she came into the marriage owning assets valued at about $70,000.

¶ 5        The schedule of assets that Jeffrey owned at the time of the marriage lists the then-current balances of various bank accounts, brokerage accounts, and accounts with a clearing firm. (In an affidavit in the record on appeal, Jeffrey describes a clearing firm as an entity affiliated with commodities exchanges that facilitates the exchange of payments, commodities, and other capital transactions). It also lists his interests in certain investment funds and partnerships, his trading right at the Chicago Mercantile Exchange, an anticipated inheritance, his residence, and several items of personal property.

¶ 6        The record reflects that during the parties' marriage, the assets on Jeffrey's schedule that he owned at the time of the marriage were invested and reinvested through numerous purchases and sales, and the value attributable to these assets increased significantly.

¶ 7        In July 2019, the parties filed cross-motions for declaratory judgment concerning the interpretation of the terms of their premarital agreement. In pertinent part, Mary Kay's motion

sought a declaratory judgment that, under the premarital agreement, all of Jeffrey's "earned income" during the marriage constituted marital property. She argued that the agreement provided that all property not defined as nonmarital property was to be considered marital property, and the agreement's definition of nonmarital property "does not include '[e]arned [i]ncome' " or "income resulting from a party's 'personal efforts.' " Rather, she argued that the only income included in the definition of nonmarital property was income explicitly " 'derived from' " a party's nonmarital property, and this meant "passive income." She argued that Jeffrey expended substantial personal efforts toward his work as a trader, as well as work as a real estate investor and consultant, and his income from these sources were not "derived from" his nonmarital property.

¶ 8        By contrast, Jeffrey's motion sought to have the trial court enter a declaratory judgment interpreting the parties' premarital agreement as supporting eight specific findings. The eighth and final finding that Jeffrey sought was that his "ownership and other rights with respect to his non-marital property remain the same even if the earnings, income and other benefits he received were derived from personal efforts during the marriage." Jeffrey argued that under the agreement, all rights granted to the owner of nonmarital property extended to any increase in value of such property and to all earnings, income, and other benefits derived from that party's personal efforts.

¶ 9        The motions were fully briefed, and a hearing was conducted by the trial court. The trial court entered an order granting the declaratory judgment sought by Jeffrey and denying the declaratory judgment sought by Mary Kay. The trial court thus declared that the agreement was interpreted as supporting the following eight findings: (1) all property purchased by Jeffrey with his nonmarital property is his nonmarital property; (2) all earnings, income, and other benefits derived from Jeffrey's scheduled nonmarital property is his nonmarital property; (3) all replacement property, immediate or remote, of Jeffrey's above-described property is his nonmarital property; (4) all

appreciation or income derived from any of Jeffrey's above-described property is his nonmarital property; (5) the marital estate has no right to reimbursement from Jeffrey's nonmarital estate except to the extent that marital funds or assets were contributed to Jeffrey's nonmarital estate; (6) there is no transmutation of Jeffrey's nonmarital property into marital property unless there is a specific agreement to do so in writing; (7) there is no gift of Jeffrey's nonmarital property to the marriage unless there's a written memorandum signed by both parties; and (8) Jeffrey's "ownership and other rights with respect to his nonmarital property remain the same even if the earnings, income, and other benefits he received were derived from personal efforts during the marriage."

¶ 10    The trial court also made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying enforcement or appeal of its order. Mary Kay then filed a timely notice of appeal.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, Mary Kay challenges only the eighth provision of the trial court's declaratory judgment order, in which it interpreted the parties' premarital agreement as providing that Jeffrey's "ownership and other rights with respect to his nonmarital property remain the same even if the earnings, income, and other benefits he received were derived from personal efforts during the marriage." Mary Kay contends that the proper interpretation of the premarital agreement is that earnings, income, and benefits derived from Jeffrey's personal efforts during the marriage constitute marital property. She thus contends the trial court misinterpreted the agreement by finding that assets derived from Jeffrey's personal efforts during the marriage could constitute Jeffrey's nonmarital property. She argues that the trial court ignored key linguistic differences in the premarital agreement concerning nonmarital property depending on when that concept is being

applied under the agreement. She also argues that the phrase " 'derived from,' " as used in the provision referring to " 'all earnings, income, and other benefits derived from' " nonmarital property, means only passive income.

¶ 13      Premarital agreements are contracts, and the standard rules governing the interpretation of contracts apply to the interpretation of premarital agreements. *In re Marriage of Enders*, 2015 IL App (1st) 142435, ¶ 85. The primary objective of contract interpretation is to ascertain the intent of the parties. *Id.* In interpreting the parties' intent, the court must view a contract as whole without focusing on isolated terms or provisions. *In re Marriage of Chez*, 2013 IL App (1st) 120550, ¶ 16. If the contractual language is clear and unambiguous, the court must ascertain the intent of the parties solely from the words of the contract, giving them their plain and ordinary meanings. *Id.* A contract is ambiguous if it is susceptible to more than one reasonable interpretation, but the fact that the parties disagree about the interpretation of a contract term does not render that term ambiguous. *Id.* ¶ 17. The interpretation of a premarital agreement presents a question of law, which this court reviews *de novo*. *In re Marriage of Best*, 387 Ill. App. 3d 948, 949 (2009).

¶ 14      By entering into a premarital agreement, parties may agree that their rights upon dissolution will not be governed by statute to the extent that they are validly modified or waived by the agreement. *In re Marriage of Best*, 228 Ill. 2d 107, 118 (2008). Thus, to frame our analysis of whether the parties' premarital agreement provides that Jeffrey's "ownership and other rights with respect to his nonmarital property remain the same even if the earnings, income, and other benefits he received were derived from personal efforts during the marriage," we begin with reference to the statute that would govern absent modification or waiver by the premarital agreement. In the absence of any premarital agreement, section 503(a) of the Illinois Marriage and Dissolution of Marriage Act provides that all property acquired by either spouse subsequent to the marriage shall

be considered marital property, except for eight categories of property defined as nonmarital property. 750 ILCS 5/503(a) (West 2004). The eighth of these categories defined by the statute as nonmarital property is "income from property acquired by a method listed in paragraphs (1) through (7) of this subsection [*i.e.*, from other nonmarital property] *if the income is not attributable to the personal effort of a spouse*." (Emphasis added.) *Id.* § 503(a)(8).

¶ 15     On appeal, Mary Kay argues that, considering the agreement's plain language and structure, Jeffrey's earned income or assets derived from his personal efforts during the marriage should not be deemed his nonmarital property. She contends that nonmarital property is defined in only two paragraphs of the agreement, paragraphs 2(F) and 3, and neither of these paragraphs contain any mention of assets generated as a result of a party's personal efforts during the marriage. Paragraphs 2(E) and 2(F) of the agreement, which define the terms "Marital Property" and "Non-Marital Property," provide as follows:

> "2.     *Definitions*. The parties agree that the following shall be defined terms of this Agreement: * * *
>
> E.     '*Marital Property*' – All property designated as such pursuant to this Agreement or not defined as Non-Marital Property pursuant to this Agreement.
>
> F.     '*Non-Marital Property*' – As defined in the Act[1] and any property designated as Non-Marital Property to this Agreement. In the event of a conflict between the definition provided in the Act and the provisions of this Agreement, this agreement hall [*sic*] control. All designations are made pursuant to 750 ILCS

---

[1] The "Act," as defined in the premarital agreement, is the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/101 *et seq.* (West 2004), as amended. Mary Kay makes no argument on appeal that incorporation of the Act's definition of nonmarital property in paragraph 2(F) of the premarital agreement has any bearing on this case, and thus we do not consider the issue.

5/503(a)(4) [(West 2004)]."

Paragraph 3 of the agreement goes on to designate certain specific types of property as nonmarital property, as contemplated by paragraph 2(F). Paragraph 3 states as follows:

"3.       *Creation of Marital Property*. The parties specifically reject the concepts of the unintentional creation of Marital Property or Community Property and the unintentional transmutation of Non-Marital Property into Marital Property or may be used to satisfy an obligation of the other party [or one party is required to cosign, guaranty or otherwise assume an obligation relating to the Non-Marital Property of the other]. MARY KAY and JEFFREY hereby confirm that it is their intention that no such transmutation shall occur with respect to their Non-Marital Property unless otherwise specifically agreed to in writing. The assets identified in the attached schedules as Non-Marital Property shall remain the parties' Non-Marital Property, regardless of whether one party's name is added to the title of the Non-Marital Property unless there is a written memorandum, signed by both parties, acknowledging that the transaction was made with the intent of the party to gift his or her Non-Marital Property to the Marriage and transmute it to Marital Property or Community Property. Accordingly, notwithstanding their marriage and except as otherwise provided in this Agreement, the following items shall be deemed Non-Marital Property, whether acquired by the applicable party before or during the marriage, unless a written memorandum, signed by both parties at the time the transaction occurs, evidences the intent of one party to gift his or her Non-Marital Property to the Marriage and transmute Non-Marital Property or Community Property:

A.       all property designated as such party's Non-Marital Property on such party's schedule of property interests attached to this Agreement;

B.    the party's clothing, jewelry and other items of personal adornment;

C.    property (other than clothing, jewelry and other items of adornment) purchased by the party with such party's Non-Marital Property, unless there is written evidence that such property was given as a gift to the other party, in which event such property shall be the Non-Marital Property of the other party;

D.    all earnings, income, and other benefits derived from property designated as such party's Non-Marital Property on such party's schedule of property interests attached to this Agreement;

E.    property owned in joint tenancy or tenancy in common by the party and one or more persons, none of whom is the other party;

F.    replacement property, immediate or remote, for any of the above-described property; and

G.    appreciation or income derived from the above-described property.

The parties agree and acknowledge that if marital funds or assets were used to purchase, improve, maintain or otherwise contribute to the value of a party's Non-Marital Property without the express written consent of the other party, the non-consenting party shall have the right to seek reimbursement for the value of the marital funds or assets that were so used." (Brackets used in original.)

¶ 16    With respect to paragraphs 2(F) and 3 above, Mary Kay argues that, if the parties had intended for earned income or assets acquired as a result of a party's personal efforts during the marriage to be categorized as nonmarital property, the parties would have expressly included that in the definition of "Non-Marital Property" in those two paragraphs. By contrast, Jeffrey argues that any property that comes within one of the definitions of nonmarital property in paragraph 3 is deemed

nonmarital property, regardless of whether that property can also be said to have resulted from a party's personal effort during the marriage. He argues that the challenged provision of the declaratory judgment was simply a recognition that this is a proper interpretation of the agreement.

¶ 17    Mary Kay argues that paragraph 4 of the premarital agreement, which Jeffrey also relies upon in part as support for the provision of the declaratory judgment at issue, does not in fact support the contested provision of the declaratory judgment when it is considered in context. She acknowledges that the last sentence of paragraph 4 references "the personal efforts of each party during the marriage," but she argues that it does not link such "personal efforts" to the definition of "Non-Marital Property" in paragraphs 2(F) and 3. Paragraph 4 of the agreement states:

> "4.      *Rights With Respect to Non-Marital Property*. Each party shall hold, own and control, and have the same rights of disposing of, all property of every kind, real or personal, that is such party's Non-Marital Property, whether acquired before the parties' marriage or during the parties' marriage, as non-marital or separate property, free and clear of any right or interest therein of the other party, to the same extent in all respects as if their marriage had never occurred. Such right shall include the power to own, use, manage, convey, mortgage, grant and dispose of the party's Non-Marital Property as he or she shall from time to time deem fit and proper, including but not limited to the right and power to dispose of such Non-Marital Property by his or her last Will, to exercise, and to have such properties and estates descend to his or her respective heirs-at-law, to the exclusion of each other and each other's heirs-at-law, and, in the case if [*sic*] trust property subject to a power of appointment, to the appointees thereof if to [*sic*] the persons to whom said property may be distributable in the event the power is wholly or partially unexercised. This provision shall include any increase in the value of such property, and all earnings, income and other

benefits derived from such property or from the personal efforts of each party during the marriage."

¶ 18       Mary Kay argues that the last sentence of paragraph 4 must be considered in context, which is that paragraph 4 addresses the parties' rights to use their respective nonmarital property during the marriage. For example, they may spend it, invest it, give it away, or bequeath it during the marriage as they see fit. And the last sentence means only that the parties' rights to use their marital property this way during the marriage also includes the right to use what they receive from their personal efforts during the marriage. Mary Kay contends that paragraph 4 does not define what that nonmarital property is. Also, paragraph 4 does define the parties' rights upon dissolution of marriage or how income or assets generated by a party's personal efforts should be characterized upon dissolution of marriage.

¶ 19       Finally, Mary Kay argues that paragraph 5 of the agreement is the provision that defines the parties' property rights upon dissolution of marriage, and that paragraph similarly does not mention nonmarital property as including earned income or assets obtained as a result of a party's personal efforts during the marriage. Paragraph 5 states as follows:

"5.       *Action for Divorce*. This Agreement is entered into without prejudice to either party's right to initiate an action for Divorce with or without the consent of the other party. The property rights of the parties upon Divorce shall be as follows:

A.       Except as otherwise expressly provided in this Agreement, a party's Non-Marital Property is and shall remain the separate, Non-Marital Property of such party and shall not be Marital Property or Community Property subject to division between the parties. However, the other party may seek reimbursement for any martial funds or assets that were used by the party in purchasing, improving,

maintaining or otherwise contributing to the value of the party's Non-Marital Property without the express written consent of the other party.

B.      All Marital Property shall be divided as determined by agreement of the parties or by a court of competent jurisdiction. MARY KAY and JEFFREY wish to agree at this time only as to their rights with respect to their Non-Marital Property. All property designated as Marital Property on such party's schedule of property interests attached to this Agreement shall be subject to division upon Divorce.

C.      Except as otherwise expressly provided in this Agreement, each party waives any right or claim to the Non-Marital Property of the other party, and to any property assigned to, or deemed to be owned by, the other party under Paragraph 3.

D.      In the event of Divorce, any issues not determined by this Agreement shall be resolved by a court of competent jurisdiction. This Agreement shall be incorporated in any decree of dissolution of the marriage of [*sic*] legal separation. ***"

¶ 20      Mary Kay points out that paragraph 5(A) contemplates that a party will have a right to reimbursement for any marital funds or assets that were used by the other party in purchasing, improving, maintaining, or otherwise contributing to the value of that party's nonmarital property without the express written consent of the party seeking reimbursement. Mary Kay contends that, if the parties had intended to include earned income or assets acquired as a result of personal efforts during the marriage as nonmarital property, they would have specifically excluded these items from anything potentially subject to a claim for distribution or reimbursement in paragraph 5.

According to Mary Kay, the fact that the premarital agreement contains no such provision is the clearest indication that the parties did not intend this.

¶ 21    After considering Mary Kay's arguments, we hold that the trial court did not err in entering a declaratory judgment that interpreted the parties' premarital agreement as providing that Jeffrey's "ownership and other rights with respect to his nonmarital property remain the same even if the earnings, income, and other benefits he received were derived from personal efforts during the marriage." Significantly, this was the eighth specific finding of the trial court's declaratory judgment order. Thus, when the trial court declared that Jeffrey's ownership and other rights with respect to his nonmarital property remained "the same," the court was referring to his ownership and rights as set forth in the preceding seven findings of its declaratory judgment order. See *supra* ¶ 9. Multiple of those seven preceding findings involve Jeffrey's ownership and rights in nonmarital property comprising "earnings, income, and other benefits."

¶ 22    The second finding of the trial court's declaratory judgment order was that "all earnings, income, and other benefits derived from [Jeffrey's] scheduled nonmarital property is his nonmarital property." This finding is based on paragraph 3(D) of the premarital agreement, which provides that a party's nonmarital property shall be deemed to include "all earnings, income, and other benefits derived from property designated as such party's Non-Marital Property on such party's schedule of property interests attached to this Agreement." The parties' use of the word "all" in paragraph 3(D) indicates that they intended that all earnings, income, and other benefits derived from a party's scheduled nonmarital property was to be deemed that party's nonmarital property, even if those same earnings, income, or other benefits also resulted in part from that party's personal efforts during the marriage. In other words, if property constitutes earnings, income, or other benefits derived from a party's scheduled nonmarital property, it does not lose

the status of being deemed nonmarital property merely because those earnings, income, or other benefits were also derived from personal efforts of that party during the marriage.

¶ 23    The parties' use of the phrase "derived from" in paragraph 3(D) further indicates that they intended the determinative factor of whether earnings, income, or other benefits were classified as nonmarital property to be whether they had a source in a party's scheduled nonmarital property. Mary Kay argues that "derived from" means only earnings, income, or benefits acquired passively, as opposed to being acquired as a result of personal efforts during the marriage. In support, she cites the definition for "derivative" from Black's Law Dictionary, which is "[s]omething that has developed from or been produced from something else." See Black's Law Dictionary 557 (11th ed. 2019). Merriam-Webster's Collegiate Dictionary defines "derive" as "to take, receive, or obtain esp. from a specified source." Merriam-Webster's Collegiate Dictionary 311 (10th ed. 1998). Both of these definitions indicate that the significance of something being "derived" is that it has a source in something else. The significance of "derived" is not whether the thing is developed, produced, taken, received, or obtained from that source through active or passive measures. Thus, we interpret the parties' use of the phrase "derived from" as indicating an intent to look to the source of the earnings, income, or benefits when classifying nonmarital property. It does not indicate any intent to distinguish earnings, income, or benefits acquired passively from those acquired as a result of personal efforts during the marriage, and accordingly we reject Mary Kay's argument that any such distinction should be drawn.

¶ 24    The same analysis applies to Mary Kay's arguments involving Jeffrey's "earned income." that applies to assets derived from Jeffrey's personal efforts during the marriage. We note that Mary Kay appears to use the phrases "earned income" and "assets derived from Jeffrey's personal efforts" interchangeably in her argument, without pointing to a distinction between them. We

further note that the phrase "earned income" is not a phrase used anywhere in the parties' premarital agreement or in section 503(a) of the Marriage and Dissolution of Marriage Act. See 750 ILCS 5/503(a) (West 2004). Rather, the parties provided in paragraph 3(D) of the premarital agreement that "*all earnings*, *income*, and other benefits" derived from a party's scheduled nonmarital property is to be deemed that party's nonmarital property. (Emphasis added.) Under the plain language of this paragraph, "earned income" derived from a party's scheduled nonmarital property would be included in "all earnings" and "income" derived from such property.

¶ 25    Paragraph 3(D) of the premarital agreement is incorporated into several other categories of nonmarital property defined in subsequent subparagraphs of paragraph 3, and correspondingly the second finding of the trial court's declaratory judgment order is incorporated into several of its subsequent findings. For example, paragraph 3(F) of the premarital agreement provides that nonmarital property includes "replacement property, immediate or remote, for any of the above-described property." This reference to "above-described property" would incorporate property deemed nonmarital property under paragraph 3(D). Paragraph 3(F) forms the basis of the third finding of the trial court's declaratory judgment order, which is that "all replacement property, immediate or remote, of [Jeffrey's] above-described property is his nonmarital property." Again, this reference to Jeffrey's "above-described property" in the trial court's third finding would incorporate property classified as nonmarital property under the second finding.

¶ 26    Similarly, paragraph 3(G) of the premarital agreement deems nonmarital property to include "appreciation or income derived from the above-described property." This reference to the above-described property would include property classified as nonmarital under paragraph 3(D) as well as paragraph 3(F). Paragraph 3(G) forms the basis for the fourth finding of the trial court's declaratory judgment order, which is that "all appreciation or income derived from any of

[Jeffrey's] above-described property is his nonmarital property." Again, this reference to Jeffrey's above described property in the fourth finding would incorporate property classified as nonmarital property under the second and third findings.

¶ 27    In summary, the trial court made seven findings in its declaratory judgment order, and Mary Kay's appeal raises no issue that these seven findings lacked foundation in the premarital agreement. Several of the trial court's unchallenged findings involved Jeffrey's ownership of and other rights with respect to property classified as his nonmarital property, specifically his nonmarital property comprising earnings, income, and other benefits. As discussed above, we conclude that paragraph 3 of the premarital agreement supports the conclusion that, provided Jeffrey had ownership or other rights with respect to nonmarital property pursuant to one of the seven preceding findings of the trial court, his "ownership and other rights with respect to his nonmarital property remain the same even if the earnings, income, and other benefits he received were derived from personal efforts during the marriage." The eighth finding of the trial court's declaratory judgment order was therefore a proper interpretation of paragraph 3 of the parties' premarital agreement.

¶ 28    Because we find that the challenged finding of the trial court's declaratory judgment order was a proper interpretation of paragraph 3 of the parties' premarital agreement, we do not need to address Mary Kay's argument that it was not supported by the language of paragraphs 4 or 5 or by the overall structure of the premarital agreement.

¶ 29                                III. CONCLUSION

¶ 30    For the reasons set forth above, we affirm the order of the trial court granting the declaratory judgment sought by the respondent/counter-petitioner, Jeffrey Silverman.

¶ 31    Affirmed.