2022 IL App (2d) 210497-U
No. 2-21-0497
Order filed March 25, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* Adoption of E.M.H., F.M.H, and M. L. H., Minors | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| v. | ) ) | No. 17-AD-19 |
| | ) ) | Honorable |
| (Michael C. Clack, Petitioner-Appellant, v. | ) | Ronald G. Matekaitis, |
| Yesenia A. Hernandez, Respondent-Appellee). | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court did not err in dismissing petitioner's action seeking to declare void the judgment by which he adopted respondent's two children by another man. Petitioner's alleged agreement with respondent—that he would pursue the adoption if she would not seek child support from him—was unenforceable as against public policy.

¶ 2   *Pro se* petitioner, Michael C. Clack, appeals from the denial of his motion for relief under section 2-1401(f) of the Code of Civil Procedure (735 ILCS 5/2-1401(f) (West 2020)).  The petition requested that the trial court void, as procured by fraud, a 2018 judgment by which petitioner and his wife at that time, respondent Yesenia A. Hernandez, adopted respondent's three children by Gildardo Abarca.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On December 19, 2017, petitioner and respondent filed an amended petition to adopt three minors born to respondent and Abarca. The petition alleged as follows. Respondent had maintained custody of each minor from his or her birth. She and petitioner were married. Abarca, recently released from prison after approximately 4½ years, was a registered sex offender. Until August 4, 2025, Abarca is prohibited from visitation with the minors. On March 8, 2018, the trial court entered a judgment terminating Abarca's parental rights to the three minors and granting the requested adoption.

¶ 5      On May 25, 2021, petitioner filed his section 2-1401(f) petition. Petitioner alleged that, because he based his action on fraud, the two-year statute of limitations (735 ILCS 5/2-1401(c)) did not apply (see *id.* § 1401(f)). He alleged further as follows. In mid-2017, the parties agreed to live as roommates in respondent's home and to go their separate ways if respondent "found someone else." They also agreed that petitioner would help respondent get Abarca's parental rights terminated. In return, respondent would not seek child support from petitioner or even file for a dissolution of marriage after they got married. Later, while the parties were living together as roommates, respondent told petitioner that she had "found someone else" and wanted to separate from petitioner. He moved out. Petitioner and respondent married on August 17, 2017. They agreed that (1) respondent would secure termination of Abarca's parental rights; (2) she and petitioner would "stay married on paper"; and (3) she "would not come after [him for] child support[,] as [they] agreed the adoption was to only for [*sic*] her to get rights revoked."

¶ 6      Petitioner alleged further that, after he read the file in the completed adoption case, he discovered that Abarca's rights had already been revoked at the time of the action. Respondent had lured petitioner into the adoption action by falsely representing that it was the only way to get

Abarca's parental rights terminated. In 2020, more than two years after the adoption judgment, respondent filed for a dissolution of marriage (case No. 20-D-92) and was now seeking child support. Petitioner had moved to strike her petition for child support.

¶ 7    The petition attached 52 pages of photographs of text messages between the parties. The messages were not arranged in chronological order and several were incomplete. Allegedly, these messages were evidence that respondent had deceived petitioner about whether she intended to file for a dissolution of marriage and, if so, whether she would seek child support from petitioner.

¶ 8    Petitioner's petition claimed that (1) respondent had used fraud to induce him into participating in the adoption and (2) she had violated their agreement to (a) "stay married on paper" solely so that she could get Abarca's parental rights terminated and (b) forgo seeking child support from petitioner. Petitioner asked the court to vacate the adoption judgment as it applied to him and free him from any child support obligations in case No. 20-D-92.

¶ 9    Filed along with the petition was a "Request for Admissions (Request)," stating in bold print that if respondent failed to serve her response within 28 days of being served with the request, as required by Illinois Supreme Court Rule 216 (eff. July 1, 2014), then all of the facts set forth in the Request would be deemed true and all of the documents described in the Request would be deemed genuine. Essentially, the Request reiterated allegations in the section 2-1401 petition.

¶ 10    On June 25, 2021, respondent filed her answer to the petition. She denied most of the material factual allegations and moved to strike the text messages for lack of a foundation.

¶ 11    On July 7, the trial court held a combined evidentiary hearing on the section 2-1401 petition and the dissolution action, in which respondent sought an award of child support.

¶ 12    Petitioner began his testimony by moving to introduce the petition's text-message exhibit. Respondent objected that there was no foundation for any item in the exhibit. On questioning by

the court, petitioner identified the phone numbers, the dates of the messages, and who sent each message. He testified that he had had face-to-face and telephone conversations with respondent about the same subject matter. On questioning by respondent, petitioner testified that he moved out of respondent's home on July 11, 2017, and married her on August 17, 2017.

¶ 13    The court noted that the exhibit was 52 pages long, the messages were not arranged chronologically, and some were partially copied. The court told petitioner, "[Y]ou can't just hand me a pile of spaghetti and say, Judge, figure out the order that these go in." Petitioner argued that respondent had conceded the truth of the exhibit by failing to respond to it within 28 days. Respondent stated that, on March 9, 2021, the court had granted her motion to strike the Request. No such motion or order appears in the record, but it seems that respondent was referring to the separate proceedings in the dissolution action. Petitioner replied that the order had stricken the original Request and that he had filed an amended Request, which respondent had not answered.

¶ 14    The court continued the hearing on the section 2-1401 petition to allow petitioner to present his exhibit properly. The court then heard evidence on respondent's request for child support in the dissolution case.

¶ 15    At the July 28, 2021, hearing, petitioner stated to the court that he and respondent had agreed that she would never seek a divorce. The court told him, "[T]he children are the ones who are impacted by this *** so if I were to grant your [petition], there would be no one in a position as a biological father *** or a legal father *** that would be obligated to help contribute to their support."

¶ 16    The trial court cited *In re Adoption of Daly*, 36 Ill. App. 3d 962 (1976). There, the petitioner and his wife (the respondent) adopted three of her children from her previous marriage. The respondent moved to Colorado and took the three children. The petitioner obtained an

annulment of their marriage, based on the theory that the marriage was a sham that the respondent procured solely to facilitate the adoption. *Id.* at 963. Under the predecessor to section 2-1401, the petitioner then sought to vacate the adoption. The trial court dismissed the petition. *Id.* at 963.

¶ 17 On appeal, the petitioner contended that, because fraud had made his marriage void *ab initio*, he and the respondent could not legally have adopted the children, making the adoption void. *Id.* at 964-65. The appellate court disagreed, stating, "[W]e must keep in mind that we are dealing with the rights of third parties here, the adopted minors, and not merely with the rights and obligations of the two partners to the marriage." *Id.* at 965. Thus, even if a court voids a marriage, the parent obtaining the judgment is not relieved of obligations to the adopted children. *Id.* The annulment of the petitioner's marriage did not relieve him of his obligations to the minors, who "were not parties to the alleged fraud the petitioner's former wife may have perpetrated upon the petitioner, and *** should not suffer for the acts of another." *Id.* at 966.

¶ 18 In the present case, the trial court noted further that, even had respondent agreed to forgo child support in return for petitioner's assistance in obtaining the adoption, the agreement was not binding. Indeed, the children's best interests could not be bargained away by respondent. Accordingly, the court dismissed petitioner's petition. This timely appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20 On appeal, petitioner appears to raise two claims of error: (1) the trial court erred in refusing to admit his text-message exhibit and (2) the judgment denied him due process by refusing to recognize respondent's alleged promise never to seek a dissolution of their marriage or child support.

¶ 21 We note that respondent has not filed an appellee's brief. However, we may reach the merits of this appeal on this short record. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 22 We next recognize that we need not reach the merits of this appeal, as petitioner's presentation of his claims of error is both confusing and unsupported by coherent legal arguments or citations to any pertinent legal authority. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued are forfeited); *Hall v. Naper Gold Hospitality, LLC*, 2012 111151, ¶ 13 (appellant must cite pertinent authority in support of claims of error and may not leave burden of research to reviewing court); *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991) (arguments insufficiently developed are forfeited). Nevertheless, we explain why the trial court's judgment dismissing petitioner's 2-1401 petition was correct on public policy and statutory grounds.

¶ 23 Petitioner's procedural argument makes no practical difference. The admission of his exhibit would not have affected the outcome of this case. His attempt to vacate the adoption was unsound as a matter of law, whatever evidence he produced. The trial court properly cited *Daly*, which relied on the well-established principle that parents contemplating a dissolution of marriage may not bargain away the best interests of their dependent children. This is still the law in Illinois. Indeed, when petitioner and respondent allegedly entered into their agreement, section 4(b) of the Illinois Uniform Premarital Agreement Act (750 ILCS 10/4(b) (West 2016)) unambiguously warned them, "The right of a child to support may not be adversely affected by a premarital agreement."

¶ 24 Petitioner's action was barred from the start by the statute and case authority such as *Daly* (see, *e.g.*, *In re Marriage of Best*, 387 Ill. App. 3d 948, 951 (2009)) that destroyed the entire basis

of his petition. Petitioner's brief does not mention any of this binding authority, much less suggest why we should not follow it.

¶ 25    Any error in the trial court's treatment of the exhibit was harmless at most.

¶ 26    Petitioner next argues that the judgment denied him property without due process of law. Petitioner does not explain how he can have a protected property interest in the money that he hoped to save by entering into an illegal agreement to deprive the adopted minors of the support that could be crucial to their best interests. Although respondent would have been a knowing party to the illegal contract, that does not mean that petitioner can enforce it. "Generally, where the parties to a contract against public policy are *** equally at fault, a court will not aid either party." *O'Hara v. Ahlgren*, *Blumenfeld, & Kempster*, 127 Ill. 2d 333, 348 (1989). Petitioner had no due process interest in the illegality; indeed, the premise of his argument is self-evident nonsense.

¶ 27                                 III. CONCLUSION

¶ 28    For the foregoing reasons, we affirm the judgment of the circuit court of De Kalb County.

¶ 29    Affirmed.